IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,053

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH MIGUEL VALDEZ,
*Appellant.*

SYLLABUS BY THE COURT

1.

Under our four-part framework for analyzing jury instruction claims, a defendant's failure to object at trial does not prevent appellate review—it simply requires a higher degree of prejudice to be shown for reversal.

2.

A rebuttable presumption has a different legal effect than a permissive inference.

3.

In general, an appellate court will not address an issue raised for the first time on appeal, although there are limited exceptions. An appellate court's refusal to invoke an exception to this general rule will be reviewed for abuse of discretion. A court abuses its discretion when its exercise is based on an error of law or fact, or when no reasonable person would have taken the view adopted by the court.

4.

The invited error doctrine's application in the context of jury instructions turns on whether the instruction would have been given—or omitted—but for an affirmative request to the court for the outcome later challenged on appeal. The ultimate question is

1

whether the record reflects a party's action in fact induced the court to make the claimed instructional error.

5.

Appellate courts do not ordinarily consider an issue not raised by the parties, but may do so sua sponte when the issue's consideration is necessary to serve the ends of justice or prevent the denial of fundamental rights after notice to the parties and allowing them an opportunity to address the issue raised by the court.

6.

A defendant's articulation of a substantial allegation about counsel's effective assistance triggers a district court's duty to inquire into a potential attorney-client conflict. This duty derives from the defendant's right to effective assistance of counsel under the state and federal Constitutions. An appellate court reviews the district court's inquiry for abuse of discretion.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 9, 2021. Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed July 1, 2022. Judgment of the Court of Appeals affirming the district court is affirmed in part, reversed in part, and vacated in part. Judgment of the district court is affirmed in part, reversed in part, and vacated in part.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Alexander Driskell*, assistant county attorney, argued the cause, and *Amy E. Norton*, assistant county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

2

The opinion of the court was delivered by

BILES, J.: A jury convicted Joseph Miguel Valdez of possession of more than 3.5 grams of methamphetamine with intent to distribute, possession of a firearm within 10 years of a prior felony conviction, and two counts of drug paraphernalia possession. He appealed raising various trial error claims. A Court of Appeals panel affirmed. *State v. Valdez*, No. 121,053, 2021 WL 1324023, at *3-6 (Kan. App. 2021) (unpublished opinion). We affirm in part and reverse in part. We hold the State presented insufficient evidence to support the firearm possession conviction and vacate its associated sentence. We affirm the remaining convictions and reject his challenge to the district court's handling of complaints he had about his trial counsel.

FACTUAL AND PROCEDURAL BACKGROUND

Valdez came out of a house in Salina yelling for help. He told a neighbor he was shot in the leg. The neighbor closed the front door to the house at his request and applied a tourniquet before paramedics arrived. Valdez at first would not give police his name or say what happened but denied shooting himself. He said he sometimes stayed at the house and had no permanent address.

Officers swept the house to make sure no one was injured or hiding inside. They saw a .380 handgun on a desk in the living room, a bullet hole in the door jamb, and women's clothing in the only bedroom on the main floor. They got search warrants for the house, a car parked in the driveway, and Valdez' cell phone.

Returning inside the house after securing the warrants, officers located a spent .380 shell casing and a slug from the door jamb. On the floor near the desk with the handgun, they found a sunglasses case with five baggies of a crystalline substance, a

3

digital scale with white residue on it, syringes, and empty baggies. In the basement, they discovered a bag with syringes, ammunition for a .45 caliber handgun, a water pipe, and men's clothing next to a bed. In this same area, there was another bag with more empty baggies.

Outside the house, police found a glass pipe on a chair. In the car, they came upon a syringe under the driver's seat. And in the jeans paramedics removed from Valdez at the scene, an officer found a baggie with a crystalline substance, money, and a syringe that appeared used.

On Valdez' phone, police recovered a message exchange from the day of the shooting in which Valdez said, "I want to shoot myself yo," and "stupid bitches man I hate feelings man I try to be good people and all I do is get fucked so you know anyone looking?" At trial, a detective with training in narcotics trafficking testified the phrase "anyone looking" is asking whether anyone was looking for a controlled substance.

KBI lab tests confirmed 14.18 grams of methamphetamine in the largest bag in the sunglasses case and 1 gram in the bag from the jeans pocket. A KBI forensic scientist testified a DNA profile from the sunglasses case reflected Valdez' DNA, with an estimated frequency in a random individual of 1 in 15 septillion in the southeast Hispanic population and 1 in 332 sextillion in the southwest Hispanic population. And a partial DNA profile from the gun also reflected a DNA sample from Valdez according to another KBI scientist, who testified the estimated frequency of this partial sample in a random individual would be extremely unlikely, e.g., 1 in 48 billion or 1 in 284 trillion depending on race.

After the jury returned guilty verdicts, the district court sentenced Valdez to 104 months' imprisonment for possession with intent to distribute and a consecutive 8-month

4

term for criminal possession of a firearm with 36 months' postrelease supervision. The court also imposed concurrent sentences of 11 months' imprisonment and 6 months' jail for the drug paraphernalia convictions. Valdez appealed. The panel affirmed. *Valdez*, 2021 WL 1324023, at \*3-6.

This court granted Valdez' petition for review. He argues: (1) the panel erred by refusing to consider his jury instruction challenge to a permitted inference about his intent to distribute methamphetamine if the jury found he possessed more than 3.5 grams; (2) the evidence does not support his conviction for possession with intent to distribute; (3) the district court erred by not instructing on the lesser included offenses of possessing lesser quantities of methamphetamine with intent to distribute; (4) the panel erred by refusing to consider his constitutional challenge to the statute providing a rebuttable presumption for intent to distribute; (5) the panel erred by refusing to consider his constitutional challenge to the statute making a felon's possession of firearms illegal; and (6) the district court erred by not appointing conflict-free counsel when inquiring into his presentencing claims of ineffective assistance of trial counsel.

Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

THE INTENT-TO-DISTRIBUTE INSTRUCTION

Valdez argues the panel erred when it refused to consider for the first time on appeal the legal appropriateness of the intent-to-distribute instruction. He claims the instruction, which provided a permissive inference of intent based on the quantity of drugs he possessed, undermined his constitutional right to a conviction on proof of all the elements of the offense beyond a reasonable doubt. In his view, there was no rational

5

connection between the quantity of drugs possessed and any inference that he intended to distribute those drugs. This, he claims, made the instruction legally inappropriate. He makes no claim the jury instruction was factually inappropriate.

We approach this issue incrementally. First, we hold the panel should have considered this as an instructional challenge using the clear error standard of review. Second, we agree the instruction's permissive inference was legally inappropriate, but for a different reason that arrives at the same result. See *State v. Holder*, 314 Kan. 799, 806-07, 502 P.3d 1039 (2022) (holding instruction consistent with PIK Crim. 4th 57.022 was legally inappropriate because it provided for a permissive inference instead of the rebuttable presumption specified by statute). Finally, we explain why we are not convinced the jury would have reached a different verdict without this instructional error. As a result, we affirm the intent-to-distribute conviction.

*Additional facts*

The State charged Valdez with possession of methamphetamine with intent to distribute. See K.S.A. 2018 Supp. 21-5705. Subsection (e) provides "[i]n any prosecution under this section, *there shall be a rebuttable presumption of an intent to distribute if* any person possesses . . . 3.5 grams or more of heroin or methamphetamine." (Emphasis added.) At Valdez' trial, the court instructed the jury by first setting out the elements of possession with intent to distribute. Then, consistent with PIK Crim. 4th 57.022 (2013 Supp.), the court instructed,

> "*If you find the defendant possessed 3.5 grams or more of methamphetamine, you may infer that the defendant possessed with the intent to distribute.* You may consider the inference along with all other evidence in the case. You may accept or reject it in determining whether the State has met the burden of proving the intent of the defendant. This burden never shifts to the defendant." (Emphasis added.)

6

The trial court also instructed the jury that,

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

Valdez did not object to these instructions. But for the first time on appeal to the panel, he argued the permissive inference of intent to distribute stated in the jury instruction violated his due process rights because "there was no evidence of a rational connection between possession of 3.5 grams of methamphetamine and an intent to distribute." The panel refused to consider this newly raised constitutional issue because the trial court did not have a chance to rule on it, explaining there was "insufficient evidence in the record to give this court a foundation for meaningful review." *Valdez*, 2021 WL 1324023, at *3.

*The panel should have considered this claim as an instructional error.*

K.S.A. 2020 Supp. 22-3414(3) provides:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection *unless the instruction or the failure to give an*

7

*instruction is clearly erroneous*. Opportunity shall be given to make the objections out of the hearing of the jury." (Emphasis added.)

Our usual four-part framework for analyzing jury instruction claims does not prevent appellate review when a defendant fails to object at trial—it simply specifies a higher degree of prejudice to warrant reversal. Under this framework,

"'First, [the reviewing court] considers the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; next, it applies unlimited review to determine whether the instruction was legally appropriate; then, it determines whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and finally, if the district court erred, this court determines whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).'

"However, if a defendant fails to object to the instructional error below, the clear error standard is applied to assess prejudice. Instructional error is clearly erroneous when '"the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred."' [Citations omitted.]" *State v. Owens*, 314 Kan. 210, 235, 496 P.3d 902 (2021).

The crux of Valdez' argument is that the jury instruction relieved the State of its burden to prove every element of the intent-to-distribute charge beyond a reasonable doubt. See *County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979) (noting a "permissive presumption . . . affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference"); *State v. Johnson*, 233 Kan. 981, 985, 666 P.2d 706 (1983) ("It has long been recognized

that any instruction which shifts the burden of proof or of persuasion to the defendant is unconstitutional and is clearly erroneous.").

This court previously has treated arguments of this nature as jury instruction challenges reviewable for the first time on appeal. See, e.g., *State v. Cameron*, 300 Kan. 384, 395, 329 P.3d 1158 (2014) (applying "a clearly erroneous standard of review" to reject the defendant's argument, raised for the first time on appeal, that a jury instruction "unconstitutionally shifted the burden to him to prove that he was not guilty"); *State v. Holt*, 300 Kan. 985, 1005-06, 336 P.3d 312 (2014) (considering an issue raised for the first time on appeal that the reasonable doubt instruction given at trial "was erroneous because it lowered the State's burden of proof").

Valdez plainly disputes the legal appropriateness of the instruction permitting the jury to infer that he intended to distribute methamphetamine based on proof of certain quantities possessed. We hold the panel erred when it declined to address this claim's merits because it was raised for the first time on appeal. Appellate courts must review a jury instruction question even if it is unpreserved. The failure to object at trial simply requires a higher degree of prejudice to be shown before reversal can be justified. See K.S.A. 2020 Supp. 22-3414(3).

*The permissive inference instruction was legally inappropriate.*

"The Due Process Clause of the Fourteenth Amendment requires proof beyond a reasonable doubt of each element of the crime charged." *State v. Craig*, 311 Kan. 456, 462, 462 P.3d 173 (2020). Because of that, evidentiary devices like presumptions and inferences "must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Allen*, 442 U.S. at 156. Valdez concedes the challenged instruction describes a permissive inference.

9

The *Allen* Court explained that "the entirely permissive inference . . . allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." *Allen*, 442 U.S. at 157. It also noted,

"Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." 442 U.S. at 157.

Valdez mostly argues in his brief that there was "no evidence of a rational connection between possessing 3.5 grams or more of methamphetamine and an intent to distribute," since "it is entirely possible that the person possesses some or all of the amount for personal use or some other intent or no intent." But at oral argument, and to some extent in his petition for review, he embraced an alternative path to error by suggesting the instruction did not fairly and accurately state the applicable law. He noted K.S.A. 2020 Supp. 21-5705(e) specifies a rebuttable presumption of intent to distribute when certain quantities of a controlled substance are found in the defendant's possession rather than the permissive inference instruction given at his trial. We generally agree with this latter viewpoint as explained in *Holder*, in which we held:

"A rebuttable presumption has a different legal effect than a permissive inference. [*State v. Harkness*, 252 Kan. 510, Syl. ¶¶ 13-14, 847 P.2d 1191 (1993)]. This means that even if we consider the jury instructions as a whole, we cannot hold they

10

fairly and accurately reflect the applicable law specified by K.S.A. 2020 Supp. 21-5705(e), when measured narrowly against that statute." *Holder*, 314 Kan. at 806.

For the reasons discussed in *Holder*, the permissive inference instruction given at Valdez' trial was legally inappropriate. *Holder*, 314 Kan. 799, Syl. ¶ 4 ("PIK Crim. 4th 57.022 [2013 Supp.] provides a jury instruction with a permissive inference the jury may accept or reject about a defendant's possession with intent to distribute when that defendant is found to possess specific quantities of a controlled substance. This permissive instruction does not fairly and accurately reflect the statutory rebuttable presumption specified in K.S.A. 2020 Supp. 21-5705[e]."); see *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012) ("[A]n instruction must always fairly and accurately state the applicable law, and an instruction that does not do so would be legally infirm."); see also K.S.A. 20-203 ("A syllabus of the points of law decided in any case in the supreme court shall be stated in writing by the judge delivering the opinion of the court, which shall be confined to the points of law arising from the facts in the case, that have been determined by the court.").

And based on this, it is unnecessary to consider other reasons why the instruction might be legally inappropriate, such as Valdez' primary contention that the instruction had no rational connection between the quantities specified and an intent to distribute. It is enough to simply recognize, as we did in *Holder*, that the quantities stated in the instruction do not align with the larger amounts the evidence demonstrated Valdez possessed. See *Holder*, 314 Kan. at 806 ("But here the instructed permissive inference was not only unmoored from any statutory basis, its 450-gram threshold [of marijuana] had no connection to the evidence.").

Based on our determination that the instruction was legally inappropriate, we must consider next whether this error requires reversal of the intent-to-distribute conviction.

11

*The jury would not have reached a different verdict.*

Because Valdez did not object to the permissive inference instruction at trial, clear error is required to reverse. *Owens*, 314 Kan. at 235 (under clear error analysis, a reviewing court must be firmly convinced the trial's result would have been different without the error). The instructional error identified does not meet this threshold.

First, the permissive instruction given at Valdez' trial did not impose any defense burden to rebut the State's prima facie case, unlike the rebuttable presumption statute apparently would. See *Holder*, 314 Kan. at 805 (explaining a "rebuttable presumption means that once the State proved possession of [a certain amount of a controlled substance], the jury must infer [the defendant's] intent to distribute unless [they] proved otherwise. This suggests some burden shifting . . . ."). Also, the State presented ample evidence Valdez not only possessed methamphetamine but intended to distribute it. For example, the evidence involved much more methamphetamine than the minimum 3.5 grams specified in the instruction to trigger the permissive inference. *Holder*, 314 Kan. at 806 ("In this context, a defendant's possession of a large quantity of narcotics certainly may support an inference that the defendant intended to distribute the narcotic."). And the evidence included empty plastic baggies and a digital scale to facilitate distribution. A detective experienced with drug trafficking also testified the text message Valdez sent to a friend asking "anyone looking" commonly meant "are you looking for some type of narcotic."

We are not firmly convinced the jury would have reached a different verdict if the instructional error had not occurred.

12

THE CONSTITUTIONAL CHALLENGE TO K.S.A. 2020 SUPP. 21-5705(e)

As an alternative to his argument that the permissive inference instruction was legally inappropriate, Valdez challenged for the first time on appeal K.S.A. 2020 Supp. 21-5705(e)'s constitutionality. As mentioned, that statute provides for a rebuttable presumption on a defendant's possession with intent to distribute when that defendant is found to have possessed specific quantities of a controlled substance. The panel declined to consider this constitutional challenge. *Valdez*, 2021 WL 1324023, at *3.

In general, an appellate court will not address an issue raised for the first time on appeal, although there are limited exceptions. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). We review the panel's refusal to consider this constitutional statutory challenge for an abuse of discretion. *State v. Johnson*, 310 Kan. 909, 912, 453 P.3d 281 (2019). A court abuses its discretion when that exercise is based on an error of law or fact, or when no reasonable person would have taken the view adopted by the court. *Allen*, 314 Kan. at 284.

Valdez acknowledges this issue is unpreserved and suggests the panel could have reached it as being necessary to serve the ends of justice or to prevent a denial of fundamental rights—a potential exception available when a party raises an issue for the first time on appeal. But Valdez does not explain how the panel abused its discretion by deciding not to address the merits, i.e., was there an error of law or fact, or does he contend no reasonable person would have taken the view adopted by the court?

Instead, he just complains the panel erred since he asserted a recognized exception. But this is not enough to carry the day. A reviewing court is not obligated to consider the unpreserved issue even when a party asserts a preservation exception in a procedurally correct way. The decision remains discretionary. *Allen*, 314 Kan. at 283-84.

13

And the burden to show abuse of that discretion rests with the one who complains about its exercise. *State v. Randle*, 311 Kan. 468, Syl. ¶ 4, 462 P.3d 624 (2020). Given that Valdez does not better articulate his disagreement with the panel, we hold it did not abuse its discretion in declining to consider K.S.A. 2020 Supp. 21-5705(e)'s constitutionality.

SUFFICIENCY OF THE EVIDENCE

As a separate issue challenging the intent-to-distribute conviction, Valdez contends the evidence that he possessed methamphetamine was circumstantial and argues the permissive inference instruction led to impermissible inference stacking. That is, he claims the jury had to infer from circumstantial evidence that he possessed the drugs in the first place, which then "stacked" the instructional intent-to-distribute inference onto that. We disagree with this contention because the evidence shows different sets of multiple proven circumstances supported both his possession of methamphetamine and his intent to distribute it.

When the State asks a jury to make a presumption based on other presumptions, it does not carry its burden to present sufficient evidence to sustain a criminal conviction. *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017). But this impermissible inference stacking does not occur when different circumstances are used to support separate inferences, or when multiple pieces of circumstantial evidence separately support a single inference. *Banks*, 306 Kan. 854, Syl. ¶ 3; see also *State v. Colson*, 312 Kan. 739, 753, 480 P.3d 167 (2021) (holding no inference stacking occurred when "the evidence supporting each inference [was] separate and distinct; no inference was necessarily presumed based on another presumption"). Rather,

> "it is permissible for the State to rely on multiple circumstances to support an inference
> . . . so long as each circumstance has been proved, rather than presumed from another
> circumstance. In other words, while it is impermissible for a case to rely upon the theory

14

that presumption A leads to presumption B leads to presumption C leads to fact D, it is perfectly proper for the State's case to be grounded upon a theory that presumption A, presumption B, and presumption C all separately point to fact D. [Citation omitted.]" *Banks*, 306 Kan. at 860-61.

In rejecting Valdez' sufficiency argument, the panel reasoned:

"When we view this record, even without the statutory presumption, a rational fact-finder could have found beyond a reasonable doubt that Valdez possessed the methamphetamine with an intent to distribute. Officers found far more than 3.5 grams of methamphetamine; the bag the KBI tested contained more than 14 grams and four other untested bags contained a similar looking substance. Officers also discovered scales with methamphetamine residue, many empty baggies, and some syringes. Valdez' DNA was the only DNA on the outside of the glasses case containing the drugs and paraphernalia. And Valdez sent a text shortly before he was shot asking an acquaintance if she knew of 'anyone looking,' which a detective testified was a phrase commonly used to refer to someone looking for narcotics." *Valdez*, 2021 WL 1324023, at *5.

As this shows, and as reflected in our clear-error analysis above, Valdez' possession of methamphetamine and his intent to distribute were independently supported by multiple, proven circumstances. And even though the circumstances supporting each element overlap, they are still different. Possession was supported by Valdez' DNA on the sunglasses case, the case's contents, and the drugs in his pocket. His intent to distribute was independently supported by his possession of the sunglasses case and its contents, the drugs in his pocket, the extra baggies in the basement, the digital scale, and the text message. We hold there was sufficient evidence to support the intent-to-distribute conviction, and this conviction did not rest on impermissible inference stacking.

15

Valdez next argues the panel erred by refusing to consider his claim that the district court should have instructed on the lesser included offenses covering possession of less than 3.5 grams of methamphetamine with the intent to distribute it. He notes 1 gram of methamphetamine was found in his clothing, while multiple baggies were in the sunglasses case with one containing more than 14 grams. He argues this was an adequate factual basis to warrant the lesser included offense instructions. We agree with Valdez that the panel erred by rejecting this claim under an invited error rationale, and that the instructions should have been given. But we hold this does not warrant reversal.

*Additional facts*

At the jury instruction conference, Valdez' counsel asked that the jury be instructed on simple possession of methamphetamine as a lesser included offense of possession with intent to distribute. His theory was that the jury could conclude Valdez did not possess the contents of the sunglasses case but did possess for personal use the 1 gram in his jeans. The State asked whether the intervening lesser included offenses of possession with intent to distribute between 1 and 3.5 grams and possession with intent to distribute less than 1 gram needed to be given too. Defense counsel clarified:

> "MS. EFFENBECK:  I'm just asking for the simple possession, the level 5.

> "THE COURT:  So the theory being, from the defense's perspective, because there is a factual distinction between the pants located on the corner with one gram of methamphetamine in the Baggie that the jury could factually distinguish that possession from the 14 point some grams in the sunglass case located within the residence near the handgun along with the other distribution paraphernalia of empty Baggies, multiple syringes, et cetera? And so that factual distinction is what you're focusing on; is that your request?

16

"MS. EFFENBECK:  Yes."

Defense counsel then offered,

"MS. EFFENBECK:  I guess the jury could separate the pants from any items found in the house.

"THE COURT:  And there is nothing in the house that would indicate it was less than 14 grams. That's the Court's thought initially, [prosecutor], is if they were to go with that theory it's either all or nothing. It's either all one gram was in his pants or nothing. I don't know any other way to characterize the evidence as less than 14 grams in the house."

The prosecutor agreed. The court then recapped defense counsel's position:

"THE COURT:  Okay. And Ms. Effenbeck, so you're asking for obviously the level 2 [possession with intent to distribute] and then one lesser included for the simple possession of a level 5?

"MS. EFFENBECK:  Yes."

The district court instructed the jury on simple possession of methamphetamine as a lesser included offense of the intent-to-distribute charge. It gave no other lesser included offense instructions.

For the first time on appeal, Valdez argued the district court should have instructed on possession of less than 3.5 grams of methamphetamine with intent to distribute as a lesser included offense of possession of 3.5 grams or more of methamphetamine with intent to distribute. But the panel refused, holding he invited the claimed error because

17

his "decision not to seek the lesser included instruction . . . was a strategic decision in line with his theory of defense." *Valdez*, 2021 WL 1324023, at \*4.

*Valdez did not invite the claimed error.*

This court recently synthesized its invited error caselaw relating to jury instructions in *State v. Douglas*, 313 Kan. 704, 707-09, 490 P.3d 34 (2021). The *Douglas* court explained that "the doctrine's application turns on whether the instruction would have been given—or omitted—but for an affirmative request to the court for that outcome later challenged on appeal." 313 Kan. at 708. The court recognized "[t]he ultimate question is whether the record reflects the defense's action in fact induced the court to make the claimed error." 313 Kan. at 708. The *Douglas* court noted,

> "The [trial] court simply asked defense counsel, 'Do you believe any lesser included offenses are applicable or are you requesting any?' Counsel replied: 'I know that I am not requesting any lesser included offenses and indeed there may not be any applicable ones either.' The State then confirmed it was not asking for any lesser included instructions, and the court ruled, 'Based on the facts that we have today, I do not believe that there is any applicable lesser [included offenses], so I concur with your comments.'" 313 Kan. at 709.

The *Douglas* court ruled that "[u]nder these facts, we cannot conclude defense counsel induced the district court's decision not to give lesser included offense instructions." 313 Kan. at 709. Likewise, the record here shows Valdez only requested a simple possession instruction. And nothing establishes that the omitted instructions would have been provided but for that limited request. Compare *State v. Walker*, 304 Kan. 441, 445, 372 P.3d 1147 (2016) (holding invited error did not occur when defendant merely confirmed he had not requested any lesser included offense instructions), with *State v. Jones*, 295 Kan. 804, 812-13, 286 P.3d 562 (2012) (determining invited error

18

occurred when the record depicted the district court showed its willingness to instruct on the lesser included offense of the charged crime, but defendant objected to giving it). We hold Valdez did not invite the claimed error on appeal. The panel erred in this regard.

*Two lesser included offense instructions should have been given.*

Having determined this is an unpreserved—though not invited—instructional error, we move to the merits.

K.S.A. 2020 Supp. 21-5705(a)(1) provides: "It shall be unlawful for any person to distribute or possess with the intent to distribute . . . any stimulant designated in subsection . . . (d)(3) . . . of K.S.A. 65-4107." See K.S.A. 2020 Supp. 65-4107(d)(3) ("[m]ethamphetamine, including its salts, isomers and salts of isomers"). And K.S.A. 2020 Supp. 21-5705(d)(3) declares:

> "Violation of subsection (a) with respect to material containing any quantity of [methamphetamine] is a:
>
> (A) Drug severity level 4 felony if the quantity of the material was less than 1 gram;
>
> (B) drug severity level 3 felony if the quantity of the material was at least 1 gram but less than 3.5 grams;
>
> (C) drug severity level 2 felony if the quantity of the material was at least 3.5 grams but less than 100 grams; and
>
> (D) drug severity level 1 felony if the quantity of the material was 100 grams or more."

19

This statute contains two lesser forms of intent-to-distribute, but Valdez did not specify in his brief or petition for review which should have been given at trial. When asked at oral argument, his counsel said both, so we consider each possibility.

The State correctly concedes instructions for both possession of at least 1 but less than 3.5 grams of methamphetamine with intent to distribute it under K.S.A. 2020 Supp. 21-5705(d)(3)(B) and possession of less than 1 gram of methamphetamine with intent to distribute it under subsection (d)(3)(A) would have been legally appropriate, as lesser degrees of the crime charged under subsection (d)(3)(C). See K.S.A. 2020 Supp. 21-5109(b)(1) ("Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is . . . [a] lesser degree of the same crime."); *State v. Armstrong*, 299 Kan. 405, Syl. ¶ 5, 324 P.3d 1052 (2014) ("The inquiry as to whether it would have been legally appropriate to give the instruction is answered by whether the lesser crime is legally an included offense of the charged crime.").

The nub of this question, then, is whether the trial evidence warranted these instructions. "'To be factually appropriate, there must be sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, to support the instruction.'" *State v. Liles*, 313 Kan. 772, 778, 490 P.3d 1206 (2021). And the facts here make application of the factual appropriateness inquiry a bit more complicated because the methamphetamine was found in two places: a 1-gram packet in Valdez' jeans pocket and multiple packets in the sunglasses case, one of which weighed 14 grams.

An instruction for possession of "at least 1 gram but less than 3.5 grams" with intent to distribute would have been factually supported on this record. The jury could have concluded Valdez possessed only the 1-gram packet, and that he intended to distribute it based on the supply of plastic baggies in the basement and his text to a friend

inquiring if the friend knew "anyone looking." And this is true even though the State asserts the 1-gram packet in Valdez' jeans was "clearly tied back to the items in the house," so it should be considered collectively with the other drugs. We hold this instruction was both legally and factually appropriate. The district court erred by not giving it.

But would an instruction for possession of less than 1 gram of methamphetamine also have been factually appropriate? We resolved this in *State v. Scheuerman*, 314 Kan. 583, 589-93, 502 P.3d 502 (2022), by deciding that a defendant's stipulation to possessing "at least 3.5 grams of methamphetamine" was enough to sustain his conviction for possession of "at least 1 but less than 3.5 grams" of methamphetamine with intent to distribute it under K.S.A. 2020 Supp. 21-5705(d)(3)(B). So based on *Scheuerman*, an instruction for the less-than-1-gram offense was factually appropriate in Valdez' case as well.

*The jury would not have reached a different verdict.*

Under the clear error standard, a jury instruction error is reversible only if "'the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *Owens*, 314 Kan. at 235.

Valdez asserts three reasons why the trial outcome would have been different had these instructions been given: (1) the evidence "is scant at best" about his intent related to the methamphetamine; (2) any evidence of intent to distribute beyond the quantity possessed "would support a finding of intent to distribute any amount" of the drug; and (3) a jury unsure about whether Valdez intended to distribute the drugs could have reached a compromise verdict by convicting him of possession of less than 3.5 grams of methamphetamine with intent to distribute. He claims these reasons raise "a real

21

possibility" the jury could have returned a verdict for a lesser degree of intent-to-distribute.

We disagree. As discussed earlier, the evidence strongly shows Valdez possessed more than 3.5 grams of methamphetamine and intended to distribute it. We hold clear error is not demonstrated. His arguments for reversal are speculative and insufficient to carry his burden.

THE POSSESSION-OF-A-FIREARM CONVICTION

Valdez argues the panel abused its discretion when it refused to consider for the first time on appeal his argument that a conviction for possessing a firearm within 10 years of a prior felony conviction violated his right to bear arms under section 4 of the Kansas Constitution Bill of Rights.

As discussed earlier, this refusal would be reviewed for an abuse of discretion by the panel, but before oral argument this court suggested sua sponte a more basic question by asking whether the conviction is supported by sufficient evidence. See *State v. Adams*, 283 Kan. 365, 367, 153 P.3d 512 (2007) ("Appellate courts do not ordinarily consider issues that are not raised by the parties. However, we have the power to address such issues in exceptional circumstances, where the consideration of the issue is necessary to serve the ends of justice or prevent the denial of fundamental rights."). We directed the parties to address this at oral arguments.

We hold there is insufficient evidence to support the firearm conviction, so we need not address the panel's avoidance of the unpreserved section 4 claim. Our conclusion about the evidence comes from reviewing the applicable statutes, the evidentiary stipulations at trial, and the jury instructions.

22

At the time of Valdez' crimes, K.S.A. 2018 Supp. 21-6304 provided,

"(a) Criminal possession of a weapon by a convicted felon is possession of any weapon by a person who:

(1) Has been convicted of a person felony . . . and was found to have been in possession of a firearm at the time of the commission of the crime;

(2) within the preceding five years has been convicted of a felony . . . and was not found to have been in possession of a firearm at the time of the commission of the crime; or

(3) within the preceding 10 years, has been convicted of a:

(A) Felony under K.S.A. 2013 Supp. 21-5402, 21-5403, 21-5404, 21-5405, 21-5408, subsection (b) or (d) of 21-5412, subsection (b) or (d) of 21-5413, subsection (a) of 21-5415, subsection (b) of 21-5420, 21-5503, subsection (b) of 21-5504, subsection (b) of 21-5505, and subsection (b) of 21-5807, and amendments thereto; article 57 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto; K.S.A. 21-3401, 21-3402, 21-3403, 21-3404, 21-3410, 21-3411, 21-3414, 21-3415, 21-3419, 21-3420, 21-3421, 21-3427, 21-3442, 21-3502, 21-3506, 21-3518, 21-3716, 65-4127a, 65-4127b, 65-4159 through 65-4165 or 65-7006, prior to their repeal; an attempt, conspiracy or criminal solicitation as defined in K.S.A. 21-3301, 21-3302 or 21-3303, prior to their repeal, or K.S.A. 2013 Supp. 21-5301, 21-5302 or 21-5303, and amendments thereto, of any such felony; or a crime under a law of another jurisdiction which is substantially the same as such felony, has been released from imprisonment for such felony, or was adjudicated as a juvenile offender because of the commission of an act which if done by an adult would constitute the commission of such felony, was not found to have been in possession of a firearm at the time of the commission of the crime, and has not had the conviction of such crime expunged or been pardoned for such crime. The provisions of subsection (j)(2) of

23

K.S.A. 2013 Supp. 21-6614, and amendments thereto, shall not apply to an individual who has had a conviction under this paragraph expunged; or

(B) nonperson felony . . . and was found to have been in possession of a firearm at the time of the commission of the crime.

"(b) Criminal possession of a weapon by a convicted felon is a severity level 8, nonperson felony.

"(c) As used in this section:

. . . .

(2) 'weapon' means a firearm or a knife."

The jury instruction on this charge set out these elements:

"The defendant is charged in count three with criminal possession of a weapon by a convicted felon. The defendant pleads not guilty[.]

"To establish this charge, each of the following claims must be proved:

"1. The defendant possessed a weapon.

"2. The defendant within ten years preceding such possession has been convicted of a felony.

"3. The defendant was not found to be in possession of a firearm at the time of the prior crime.

"4. This act occurred on or about the 30th day of June, 2018, in Saline County, Kansas."

24

At trial, the parties stipulated to Valdez' possession of a firearm within 10 years of a prior conviction, and the jury was told:

> "The following facts have been agreed to by the parties and are to be considered by you as true:
>
> "(1) The defendant within ten years preceding June 30, 2018 has been convicted of a felony and has not had the conviction of such felony expunged or been pardoned for such felony.
>
> "(2) The defendant was not found to be in possession of a firearm at the time of the prior felony.
>
> "Evidence has been admitted tending to prove that the defendant had been convicted previously of a felony. It may be considered solely as evidence of the defendant's convicted felon status for count three and it should not be considered by you for any other purpose."

We note parenthetically that before trial, the district court may have received into evidence what is described in the record as a certified copy of Valdez' prior conviction. But it appears the court withheld this document from the jury, so it could not have played a role in its deliberations. Regardless, it is not in the appellate record.

*Discussion*

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Pearce*, 314 Kan. 475, 480, 500 P.3d 528 (2021).

25

Applying this standard to the evidence before Valdez' jury, a rational fact-finder could not have concluded all the elements of the statutorily defined crime had been proven. As can be seen, neither the instruction nor the stipulation specifies what Valdez' prior crime was, although the jury was told he was not found to be in possession of a firearm while committing it. These stipulations preclude conviction under both K.S.A. 2018 Supp. 21-6304(a)(1) and (a)(3)(B). Similarly, the evidence does not establish the prior crime was committed within five years, so this eliminates K.S.A. 2018 Supp. 21-6304(a)(2).

This means the only remaining basis for conviction is K.S.A. 2018 Supp. 21-6304(a)(3)(A), and it is limited to enumerated offenses. But the stipulation only specified that Valdez committed "a felony," so again there is no factual basis or inference to convince us the jury could have found the essential—yet missing—element from what it was given.

We hold the evidence before the jury would not have supported the finding, even if it were properly instructed. Valdez' conviction for criminal possession of a firearm by a felon must be reversed because of insufficient evidence, which necessitates vacating the associated sentence. But remand is not required because the firearm conviction was not the primary crime at Valdez' sentencing, the applicable postrelease supervision term is not affected, and the sentences for the remaining convictions all run concurrent.

THE CONFLICT-FREE COUNSEL CLAIM

Valdez argues the district court erred by failing to appoint substitute counsel to assist him when discussing his claim of ineffective assistance of trial counsel, and that the panel failed to apply the appropriate review to address that claim on appeal. We hold

26

neither the allegation of ineffective assistance of trial counsel mentioned by Valdez nor the district court's questions to defense counsel required appointing substitute counsel.

*Additional facts*

Before sentencing, Valdez filed a pro se motion for downward dispositional departure. In it, he alleged, "Defendant and his counsel have not been in agreement on issues, and Defendant intends to [pursue] ineffective counsel options for appeal, hence the pro se motion." He did not elaborate on his intended course of action, and the only relief he requested was that he be afforded "treatment options versus imprisonment." The next day, defense counsel filed a parallel motion also seeking dispositional departure to probation.

At the sentencing hearing, the court first took up the pro se motion. It began by asking defense counsel how the pro se motion and its ineffective assistance of counsel assertion affected the hearing. Counsel responded,

> "I guess that would be up to the Court. As you know Mr. Valdez has never been happy. I guess it would be up to him if he wants to I guess rest on his motion for dispositional departure or rely on mine. He's also made an argument regarding attorneys fee, which of course the State will do a *State v*[.] *Robinson* analysis no matter what. So I don't know if the Court feels—what the Court wants to do."

The court then had a long exchange with Valdez and defense counsel.

> "THE COURT: Mr. Valdez, you assert ineffective assistance of counsel but don't give any grounds for it. What's the purpose of that?
>
> "THE DEFENDANT: The grounds for ineffective counsel is I've asked my attorney to come speak to me on several occasions. She's not. I've asked her for motions

27

of discovery for more evidence to see what they have to have—actually have grounds to prosecute me guilty of this case. She has not answered my letters properly. She's trying to say—she's threatened to say that she was going to have a mistrial because right before my trial she said that she was going to—I was on the verge of having a mistrial while we were picking the trial."

Valdez clarified the last remark referred to his attorney telling him before trial "she was on the verge of just saying that she wanted to go for a mistrial." The court asked how this affected his ineffective assistance claim, and Valdez responded: "[S]he has not done anything that complied with anything that I have asked her to do for me." The court asked for clarification as to "[w]hat specifically . . . she ha[d] not done that would render her ineffective." He answered "she has not even stated the evidence, she has not given me really evidence on any of this stuff. She has not given me a motion of discovery, a motion of anything."

Defense counsel told the district court Valdez "received copies of the police reports." Valdez agreed, saying: "That's it, that's all I've had." Defense counsel responded, "Well, that would be the evidence, your Honor." The court sought more clarification from Valdez:

"THE COURT: What specifically—what other evidence do you think—we've been to a jury trial and the jury has convicted you beyond a reasonable doubt. All evidence has been presented in open court. What is it that you think—

"THE DEFENDANT: She has not complied with none of my legal services. She don't even come and visit with me about my stuff. She hasn't even tried to come over to build a case for myself. Like she didn't even try to fight. She didn't even have an opening for me."

28

The court asked counsel if she had visited with Valdez. She responded she had not since the trial and commented, "At that point there's not a lot I can do for him, your Honor, we had a jury trial." When Valdez then said counsel only visited him three or four times before trial, the court inquired of defense counsel:

"THE COURT: Ms. Effenbeck, I'd asked you that question. Did you see him before the trial?

"MS. EFFENBECK: Yes. And the Court was here, the Court did the jury trial. I was prepared for the jury trial, your Honor. The Court saw the evidence and saw what happened with the jury. You know, I don't know that I could have changed the outcome of this case."

Valdez then pointed out:

"THE DEFENDANT: Also at my preliminary we didn't even see the body cams or anything. Aren't you supposed to reveal all of the evidence of body cams and everything at your preliminary? We didn't see that at preliminary.

"THE COURT: Well, Mr. Valdez, I don't know where you're giving getting that information from. There is no requirement that cameras or video be shown at any stage of the proceeding. The State has the choice as to what evidence it presents in prosecuting your case and then the defense can respond as it sees fit. But there is no requirement that body cameras, video, anything be shown at preliminary hearing. In fact in Kansas the State's prosecutors office could elect to not even have preliminary hearings, could use a grand jury proceeding in which you would not have any ability to demand any of that. It would simply be the police report being read by a police officer. That's one end of the spectrum. And I don't know where you're getting this idea.

"THE DEFENDANT: I still believe I didn't have enough access to my attorney.

29

"THE COURT: Okay. And Ms. Effenbeck has indicated that she visited you on multiple occasions before the trial.

. . . .

"THE COURT: Other than you believe her contact hasn't been sufficient and she that has not given you the discovery, other than police reports,—

"THE DEFENDANT: I've called her number. She never answers her phone, never. I've wrote letters. She never pretends to acknowledge any of my letters."

The court asked if there was "an issue with responding to letters," to which counsel replied: "[M]ost of the letters aren't very constructive as you can imagine. So in this regard I've written him back . . . and told him and explained to him that I can't file a notice of appeal until after he's sentenced. I've gone through material like that."

The court then addressed Valdez, which led to a new complaint about defense counsel's performance at the trial:

"THE COURT: Your attorney makes all the strategic decisions regarding how to present the case. There are decisions you get to make, which is for example pleading not guilty, whether you testify. But what motions to file, what evidence to present at the trial, other than your testimony, that's the strategic decision of counsel.

"THE DEFENDANT: But she hasn't done none of that.

"MS. EFFENBECK: Your Honor, you were here for the jury trial. I participated, I was prepared.

"THE DEFENDANT: She was not prepared and she over exaggerated, over animated.

30

. . . .

"THE COURT:  What do you mean by that?

"THE DEFENDANT:  Well, she was waving her hand, signaling and all that stuff, you know what I'm saying?

. . . .

"THE DEFENDANT:  Like all that. And be honest too, be honest too, you guys were all in cahoots, whatever. We had that little evidence thing. She wasn't even paying attention to that.

"MS. EFFENBECK:  I was writing my closing statement.

"THE COURT:  What are you talking about?

"MS. EFFENBECK:  When he accused the court reporter and the bailiff of—

"THE DEFENDANT:  I didn't accuse, I seen it. I seen it.

"MS. EFFENBECK:  Okay. When he said he saw the court reporter and the bailiff tampering with the evidence."

After this exchange, the court ruled:

"There was no tampering. There is nothing there. It was just organizing exhibits, Mr. Valdez. I haven't heard anything that would give rise to the counsel being removed from the case. Mr. Valdez, everything the Court witnessed was that your attorney was prepared, presented a good defense, a jury of unbiased individuals listened to the evidence and found guilt beyond a reasonable doubt. It sounds like there may be some misconception regarding what you are entitled to. If you want your own attorney you can hire one and then you get to have more say in this situation possibly."

This caused Valdez to assert he should have "every say so" in his case, to which the court replied:

"[I]f you want to make every strategic decision you should have represented yourself. Counsel is trained in the legal profession to make decisions and to strategically approach your case. There are some decisions you and you alone can make, which I've gone over those with you, but other than that the attorney is the one who's trained in the legal field to make strategic decisions and to produce the evidence and prosecute the case as they see fit."

Valdez replied that he had already "said [his] grounds," and the court ruled:

"I haven't heard sufficient grounds to have her withdrawn. I also don't see a need for counsel to spend time post conviction. And preconviction it sounds like there was sufficient preparation. The number of meetings though may not have been sufficient for Mr. Valdez's liking but it was sufficient for the Court for competent counsel. And so for that reason that portion of the motion is denied."

The court then moved to sentencing, during which defense counsel unsuccessfully argued for a downward dispositional departure.

Before the panel, Valdez argued the trial court should have appointed new counsel and held an evidentiary hearing at which he could present evidence of defense counsel's deficiencies. But he also conceded new counsel likely would not have been necessary had the court reviewed the claims and summarily denied them. His argument, though, is that the colloquy transformed into an evidentiary hearing during which he was unrepresented while the court "allowed appointed trial counsel to present evidence to rebut Mr. Valdez' claims." He argued defense counsel "faced a conflict of interest and acted in her own self-interest, by arguing and presenting evidence against" his interests. Valdez asked for

32

remand to the district court with instructions to appoint new counsel and conduct an evidentiary hearing.

The panel disagreed. It reasoned the trial court properly discharged its duty to inquire into potential conflict raised by the pro se motion, applying *State v. Toothman*, 310 Kan. 542, 448 P.3d 1039 (2019), and noting,

> "The court asked a series of open-ended questions to understand Valdez' claim. Valdez stated that his attorney had not visited him enough times, had not provided him with evidence, had not complied with his wishes, and had not advocated fervently enough on his behalf. The trial court asked Valdez' attorney several questions along the way, and she informed the court that she had given Valdez copies of the police reports, had visited him several times before the trial, and had replied to the letters that she had received from him. The court found that Valdez' attorney had been well prepared, presented a good defense, and adequately communicated with Valdez." *Valdez*, 2021 WL 1324023, at *5.

*Discussion*

A defendant's articulation of dissatisfaction with counsel triggers a district court's duty to inquire into a potential conflict. See *State v. Pfannenstiel*, 302 Kan. 747, 760, 357 P.3d 877 (2015). This duty derives from the defendant's right to effective assistance of counsel under the state and federal Constitutions. *Toothman*, 310 Kan. at 554. An appellate court reviews a district court's inquiry about a defendant's dissatisfaction with counsel for abuse of discretion. *Toothman*, 310 Kan. at 554.

As noted previously, an abuse of discretion occurs when judicial action is based on an error of law or fact or is unreasonable. 310 Kan. at 554. An appropriate inquiry requires the district court to investigate:

33

"'(1) the basis for the defendant's dissatisfaction with counsel and (2) the facts necessary for determining if that dissatisfaction warrants appointing new counsel, that is, if the dissatisfaction is "justifiable."' But this inquiry does not require 'a detailed examination of every nuance of a defendant's claim of inadequacy of defense and conflict of interest.' Instead, '[a] single, open-ended question by the trial court may suffice if it provides the defendant with the opportunity to explain a conflict of interest, an irreconcilable disagreement, or an inability to communicate with counsel.' [Citations omitted.]" 310 Kan. at 554.

To obtain new counsel, a defendant must show justifiable dissatisfaction with appointed counsel. *Pfannenstiel*, 302 Kan. at 759. To do that, the defendant may show "a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant." 302 Kan. at 759-60. In *Toothman*, the court held the trial court adequately inquired into the defendant's asserted discontent with counsel when it investigated "the basis for his dissatisfaction and ask[ed the defendant] an open-ended question to elicit additional facts." *Toothman*, 310 Kan. at 555. The *Toothman* court noted that in resolving the complaint, the trial court expressed confidence in defense counsel's judgment "but did not . . . simply assume she was correct. On the contrary, the judge gave [the defendant] the last word and a full opportunity to explain why he wanted new counsel." 310 Kan. at 555.

Here, the trial court gave Valdez an open-ended prompt to explain his ineffective assistance allegation. Valdez told the court:  he was unhappy with the level of communication with defense counsel; he did not believe he had seen all the evidence; that counsel was unprepared for trial; and he should have had more control over strategic decisions. The court then explored each complaint in greater detail with both Valdez and defense counsel. After doing so, it concluded there were insufficient grounds to remove defense counsel, finding that her pretrial preparation and communication was "sufficient for . . . competent counsel."

34

Valdez does not appear to challenge the panel's conclusion that he had no right to relief under *Toothman*. Instead, he argues only that his allegation of ineffective assistance automatically created a conflict of interest with trial counsel, and by hearing defense counsel's "evidence to rebut [his] claims" the district court deprived him of assistance of counsel. He cites a portion of a concurring opinion in *State v. Stovall*, 298 Kan. 362, 380, 312 P.3d 1271 (2013) (Luckert, J., concurring), for the proposition that his and defense counsel's interests were automatically in conflict. But this is not supported by that case citation, and it is not a correct statement of law.

Neither an allegation of ineffective assistance nor defense counsel's participation in the justifiable dissatisfaction inquiry alone—or in combination—requires appointment of new counsel. See *Pfannenstiel*, 302 Kan. at 766 (holding inquiry into dissatisfaction with counsel based on asserted ineffective assistance did not require appointment of conflict-free counsel).

> "Rather than require automatic substitution of counsel at the hint of a potential conflict of interest, the United States Supreme Court has recognized that either a defendant or defense counsel might raise a potential conflict as the basis for seeking new counsel 'for purposes of delay or obstruction of the orderly conduct' of the proceedings. *Holloway v. Arkansas*, 435 U.S. 475, 486, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978). An inquiry assures any delay is for good cause, thereby avoiding automatically delaying proceedings by discharging the current counsel and appointing new counsel for all motions seeking substitute counsel, regardless of the motion's merits." *Pfannenstiel*, 302 Kan. at 764.

When performing the justifiable dissatisfaction scrutiny "both the court and defense counsel" must "walk a delicate line in making [that] inquiry." 302 Kan. at 766. The judge must not improperly require disclosure of confidential communications, and

counsel may simply recount facts truthfully, but must not go "beyond factual statements and advocat[e] against the client's position." 302 Kan. at 766. Otherwise, counsel's responses may create a conflict of interest requiring new counsel. But the simple fact there was a back-and-forth between counsel, the defendant, and the court does not inevitably disqualify counsel and require a new attorney.

The *Pfannenstiel* court held the trial court properly rejected the defendant's claim of ineffective assistance of counsel after an inquiry in which both the defendant and defense counsel participated without a need for new counsel. 302 Kan. at 766. The *Pfannenstiel* court observed defense counsel made two comments that "approached the line of advocating against" the defendant's position: First, by making "an evaluative statement regarding her strategy, indicating she felt Pfannenstiel's witnesses would not be helpful and might undermine his testimony"; and second, by saying the defendant had "'misunderstood some things'" she told him. 302 Kan. at 767. The *Pfannenstiel* court held both comments were acceptable, reasoning the former concerned a strategic decision, generally an appropriate area of inquiry; and the latter supported the defendant's allegation that communications had broken down and was immediately followed by counsel's request to grant defendant's motion. 302 Kan. at 767.

We hold the trial court did not err conducting this inquiry without appointing substitute counsel to represent Valdez. His defense counsel largely gave only factual responses during the colloquy but did offer some self-evaluation. She twice told the district court she was "prepared" at trial and did not believe she could have changed the outcome. She also told the court Valdez had "never been happy," and that his letters to her were not "constructive." But these insignificant remarks did not require new counsel.

Convictions affirmed in part and reversed in part, and sentence vacated in part.

36

* * *

STEGALL, J., concurring:  The majority badly misreads and misapplies our recent decision in *State v. Holder*, 314 Kan. 799, 502 P.3d 1039 (2022). The majority cites to *Holder* for the proposition that "the permissive inference instruction given at Valdez' trial was legally inappropriate." Slip op. at 11. But *Holder* never held that a permissive inference instruction based on PIK Crim. 4th 57.022 (2013 Supp.) (the instruction at issue both here and in *Holder*) was legally inappropriate, and the majority is simply wrong to suggest otherwise. The entire relevant passage from *Holder* is as follows:

> "These definitions tell us Holder has a point when he complains about the apparent discrepancy between the permissive inference instruction given in his case and K.S.A. 2020 Supp. 21-5705(e)(1)'s rebuttable presumption of an intent to distribute if any person possesses 450 grams or more of marijuana. Applying the definitions adopted in *Harkness*, the statutory rebuttable presumption means that once the State proved possession of 450 grams or more of marijuana, the jury must infer Holder's intent to distribute unless he proved otherwise. This suggests some burden shifting, although the operative impact in a given case would depend on the jury instructions as a whole. See *State v. Wimbley*, 313 Kan. 1029, 1039, 493 P.3d 951 (2021) (when addressing a challenged instruction's legal appropriateness, an appellate court does not view the instruction's language in isolation but considers all the jury instructions as a whole).

> "The panel correctly noted the instruction given to the jury 'conforms to the instruction required under PIK Crim. 4th 57.020 . . . .' *Holder*, 2020 WL 6108359, at *6. But that misses the point because it ignores what K.S.A. 2020 Supp. 21-5705(e) specifies. And our law is clear that 'an instruction must always fairly and accurately state the applicable law, and an instruction that does not do so would be legally infirm.' *Plummer*, 295 Kan. at 161.

> "A rebuttable presumption has a different legal effect than a permissive inference. *Harkness*, 252 Kan. 510, Syl. ¶¶ 13-14. This means that even if we consider

37

the jury instructions as a whole, we cannot hold they fairly and accurately reflect the applicable law specified by K.S.A. 2020 Supp. 21-5705(e), when measured narrowly against that statute.

"But aside from that, we also should consider more broadly whether the instruction—framed as it was as a permissive inference—was nevertheless legally appropriate. To do this, we view the instructions as a whole to determine '"whether it is reasonable to conclude that they could have misled the jury."' *Wimbley*, 313 Kan. at 1035 (quoting *State v. Liles*, 313 Kan. 772, 780, 490 P.3d 1206 [2021]). Instructions fail their purpose if they omit words that may be considered essential to providing the jury with a clear statement of the law. *State v. Andrew*, 301 Kan. 36, 42-43, 340 P.3d 476 (2014).

"In general, a jury may infer intent from '"acts, circumstances, and inferences reasonably deducible therefrom."' *State v. Ross*, 310 Kan. 216, 224, 445 P.3d 726 (2019) (quoting *State v. Barnes*, 293 Kan. 240, 264, 262 P.3d 297 [2011]). In this context, a defendant's possession of a large quantity of narcotics certainly may support an inference that the defendant intended to distribute the narcotic. See 1 Jones on Evidence § 5:42 (7th ed.). But here the instructed permissive inference was not only unmoored from any statutory basis, its 450-gram threshold had no connection to the evidence. Said differently, the jury was simply told out of left field that Holder's possession of 'more than 450 grams' of marijuana could support an intent-to-distribute inference—even though the evidence showed a much larger quantity and no other evidence explained why a 450-gram threshold to trigger this permissive inference was important to anything about the case." *Holder*, 314 Kan. at 805-07.

There is nothing in this passage I disagree with. Let's recapitulate the analysis one step at a time. First, the *Holder* court says a jury instruction must fairly and accurately state the law. Second, the court says that PIK Crim. 4th 57.022 does not accurately reflect K.S.A. 2020 Supp. 21-5705(e)(1) because while the statute includes a rebuttable presumption, the PIK instruction only describes a permissible inference. So *Holder*

38

deduced that "when measured narrowly against that statute" the permissive inference instruction does not fairly and accurately state the law. 314 Kan. at 806.

But then, thirdly, the *Holder* court continued its analysis. We went on to "consider more broadly whether the instruction—framed as it was as a permissive inference—was nevertheless legally appropriate." 314 Kan. at 806. Why do that if we already decided the PIK instruction did not accurately reflect the statute? The answer is that we recognized that permissive inferences are perfectly legal and acceptable in criminal trials regardless of whether a rebuttable presumption is on the books. In fact, such inferences, when reasonable, are the operative principle of circumstantial evidence and are generally the only way juries may use such evidence in criminal trials. See *State v. Kriss*, 232 Kan. 301, 304-05, 654 P.2d 942 (1982) ("Because [a] permissive [inference] leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.").

We said as much in *Holder* by explaining that the PIK permissive inference instruction might be "nevertheless legally appropriate" because "a defendant's possession of a large quantity of narcotics certainly may support an inference that the defendant intended to distribute the narcotic." 314 Kan. at 806. So fourthly, in *Holder*, we proceeded to analyze the permissive inference instruction given in that case *independently* of K.S.A. 2020 Supp. 21-5705(e)(1). And in so doing, we found the instruction to be error not because it was legally inappropriate (in fact we said the opposite—that depending on the evidence it may be a correct statement of the law), but rather because it was factually inappropriate. That is, we held that because the instruction

39

did not match the *evidence in the case*, it was error to give it. That is a holding on factual appropriateness.

We ought to follow the same analytical path in today's case. But the majority chooses to simply say the instruction is legally inappropriate because it misstates the law. This mystifies me as it throws into doubt a bedrock principle of how juries may consider evidence. Does this mean a jury is no longer permitted to draw reasonable inferences about intent from the amount of illegal drugs possessed by a defendant? If a prosecutor tells a jury it may infer a defendant intended to sell drugs due to the large quantity in evidence, does that prosecutor commit error for misstating the law?

Instead of sowing such confusion, we ought to ask if the permissive inference instruction—standing alone—is a correct statement of the law. That is what we did in *Holder*. Clearly, it is. We know this because permissive inferences are always lawful so long as the facts make such inferences reasonable. We know that a prosecutor telling a jury it is permitted to draw reasonable inferences from the evidence is not prosecutorial error for misstating the law. See *State v. Timley*, 311 Kan. 944, 951, 469 P.3d 54 (2020) ("[W]e find it unnecessary to require the prosecutor to include the unspoken, but implicit, disclaimer inherent in all opening arguments, i.e., 'If you look at the evidence, a reasonable inference is that . . .'").

If I say "apples and bananas are fruit" and you reply "bananas are fruit," you have not contradicted me. In the same way, if the Legislature says "a jury should presume intent" and the trial judge says "a jury is permitted to infer intent," there is no contradiction. Just as a banana remains a fruit regardless of whether an apple is also a fruit, so too a permitted inference remains lawful even in the face of a statute declaring a presumption to also be lawful.

40

The majority is correct that in the present case Valdez failed to properly raise a factual appropriateness challenge to this instruction. Consequently, I would hold that the permissive inference instruction was legally appropriate and there was no error. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (issue not briefed is deemed waived or abandoned).

LUCKERT, C.J., joins in the foregoing concurrence.