IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,459

STATE OF KANSAS,
*Appellee*,

v.

KORA L. LILES,
*Appellant.*

SYLLABUS BY THE COURT

1.

A court follows a two-step analysis to address a prosecutorial error claim. First, it decides whether an error occurred. For the first step, if the claim relates to something the prosecutor said, the court looks at the statement complained about to decide if it falls outside the wide latitude afforded the prosecutor in conducting the State's case and attempting to obtain a conviction in a manner that does not offend a defendant's fair trial rights under the Fourteenth Amendment. The defendant can establish the first prong by demonstrating the prosecutor misstated the law or argued factual assertions with no evidentiary foundation. If the court finds error, it takes the second step and considers prejudice to determine whether that error was harmless.

2.

A court considers jury instructions as a whole to determine whether they properly and fairly state the applicable law and whether it is reasonable to conclude they could have misled the jury.

1

3.

A district court is not legally required to instruct a jury to view with caution the testimony of a noninformant witness who is testifying in exchange for benefits from the State.

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Opinion filed July 16, 2021. Affirmed.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  Kora L. Liles appeals her convictions and sentences stemming from three murders at her Topeka home. She argues:  (1) the prosecutor misstated the law by telling the jury to use the same caution in considering her testimony as her accomplices who testified for the prosecution; (2) the district court erred by refusing to instruct the jury to view the accomplices' testimony with caution because they were receiving benefits from the State; (3) the cumulative effect of these two alleged errors on her fair trial rights requires reversal; and (4) the State breached an unwritten, postconviction agreement to make a favorable sentencing recommendation if she testified in the trial of other participants in the crimes. We reject each challenge and affirm.

We hold the prosecutor's argument on Liles' credibility stayed within permissible bounds, and that the court properly refused to modify the accomplice jury instruction. These rulings make a cumulative error analysis inappropriate. As to sentencing, we hold

2

Liles failed to make an adequate record concerning the alleged agreement to allow meaningful review.

FACTUAL AND PROCEDURAL BACKGROUND

Luke Davis, Nicole Fisher, and Matthew Leavitt were murdered the night of March 11-12, 2017, at Liles' house. The controverted chain of events alleged and the trial evidence establishing her crimes of conviction are largely irrelevant to the issues now raised on appeal. It is enough to know the victims died following hours of confrontation and violence. Davis eventually died after being strangled with an electric fan cord used as a ligature. Fisher was suffocated to death with a plastic bag placed over her head. And Leavitt died from strangulation when his neck was held between his killer's legs during a struggle. There was evidence Liles had accused Leavitt of a sexual impropriety toward her in the weeks preceding the murders.

The State charged Liles, her then-boyfriend Joseph Lowry, her ex-husband Brian Flowers, and Joseph Krahn with the murders and related crimes. The State also charged Shane Mays and Richard Folsom, who both reached cooperation agreements for their testimony.

A grand jury indicted Liles on 11 charges: three counts of felony murder with two alternative underlying felonies, i.e., aggravated kidnapping or aggravated assault; three counts of aggravated assault with a deadly weapon; three counts of aggravated kidnapping; one count of possessing methamphetamine with intent to distribute; and one count of unlawful use of drug paraphernalia. A jury convicted her on all counts.

The district court imposed three hard 25 sentences for the felony-murder convictions, a 226-month sentence for one of the aggravated kidnapping convictions,

3

165-month sentences for each of the remaining aggravated kidnapping convictions, three 13-month sentences for the aggravated assault convictions, and a 98-month sentence for the possession conviction. The court ran all these sentences consecutive. The court also imposed a concurrent one-year sentence for the paraphernalia conviction. This is Liles' direct appeal. Jurisdiction is proper. K.S.A. 2020 Supp. 22-3601(b)(3), (4).

PROSECUTORIAL ERROR

Liles argues the prosecutor misstated the law during closing arguments by telling the jury a cautionary instruction given with respect to accomplice testimony applied to Liles' testimony as well. We reject this because the prosecutor did not make the legal assertion Liles claims. The prosecutor made a permissible statement about credibility.

*Additional facts*

The district court gave the jury an instruction about accomplice testimony because Mays and Folsom testified. Instruction 8 stated: "An accomplice witness is one who testifies that he was involved in the commission of a crime with which the defendant is charged. *You should consider with caution the testimony of an accomplice*." (Emphasis added.)

During closing arguments, defense counsel argued the jurors "most importantly . . . should consider with caution, the testimony of an accomplice." He explained an accomplice might seek to obtain immunity or a lighter sentence by trying to shift blame to someone else, or might simply wish to drag someone else down for malice. He pointed out Mays negotiated a plea bargain for lesser charges in exchange for his testimony. On rebuttal, the prosecutor addressed this, telling the jury,

4

"Now, I want to go on to Instruction Number 8, because this is where we talk about the credibility of the witnesses. [Defense counsel] talked about this, and he says the law requires you, or somewhat suggested the law requires you to disbelieve the testimony of an accomplice. That's not what the instruction says. It says you should consider with caution the testimony of an accomplice. And that makes sense, because somebody who's perhaps getting a benefit for their testimony . . . you might want to consider with caution. That's sensible."

The prosecutor then made the following comment Liles now challenges:

"*That also applies to Ms. Liles, because she has a bias in her testimony*. She has a bias to mislead you, to make you think things are true that are not true, so that you will think that there's a reasonable doubt as to her guilt, because in essence, in broad strokes, what is it that Ms. Liles is saying here today? What is her account of what happened? I was in this house, and all these other people started to do the things, and I had nothing to do with it. . . .

"That testimony, if you look at all the other evidence in the case, is simply not believable, and it is nowhere near believable and credible when [you] compare it to the testimony of [*sic*] the prior statement of Shane Mays. This is true for a number of reasons." (Emphasis added.)

The prosecutor argued Liles' testimony was internally inconsistent, giving examples. He asserted there was no explanation for the night's events other than Liles being upset with Leavitt. He argued Liles admitted her involvement but consistently minimized her participation. He pointed out Liles claimed to be scared of Lowry, but he was the one who told her to establish an alibi, which she tried to do by leaving and being seen elsewhere. And the prosecutor pointed out that while Liles claimed the others threatened her children, she never went to look for or take care of them. He argued the most reasonable explanation for all this was that Liles was the "boss" and the others were

5

doing her "dirty work." He also argued Mays' testimony was more believable because he was "putting his own neck in the noose" by admitting his intent to kill Fisher.

*Standard of review*

A court follows a two-step analysis to address a prosecutorial error claim. First, it decides whether an error occurred. For this first step, if the claim relates to something the prosecutor said, the court looks at the statement complained about to decide if it falls outside the wide latitude afforded the prosecutor in conducting the State's case and attempting to obtain a conviction in a manner that does not offend the defendant's fair trial rights under the Fourteenth Amendment. A defendant can establish the first prong by demonstrating the prosecutor misstated the law or argued factual assertions with no evidentiary foundation. If the court finds error, it takes the second step and considers prejudice to determine whether that error was harmless. *State v. Vonachen*, 312 Kan. 451, 467, 476 P.3d 774 (2020).

*Discussion*

Prosecutors may point out inconsistencies in a defendant's statements and argue the evidence reflecting poorly on the defendant's credibility. But in doing so, they may not accuse a defendant of lying. *State v. Haygood*, 308 Kan. 1387, 1402, 430 P.3d 11 (2018). Here, the prosecutor's argument was consistent with this limitation by pointing out potential bias affecting Liles' testimony and making an evidence-based argument as to why other testimony reflected poorly on her credibility. The prosecutor noted Liles stood to benefit from skewed testimony because it increased her acquittal chances. And he detailed why other evidence undermined Liles' testimony that she was merely an innocent bystander.

6

Liles concedes prosecutors may argue witness bias. But she claims the prosecutor in this instance linked the accomplice instruction directly to her testimony. This, she argues, would be an error of law. The State contends Liles mischaracterizes the prosecutor's comments. We agree with the State. Rather than tying the accomplice instruction to Liles, the prosecutor simply argued the same underlying reasons for that instruction about self-serving accomplices applied to Liles' testimony as the defendant.

Liles contends a misstatement occurred because the prosecutor violated a "'constitutional limit on a court's ability to comment on a defendant's credibility in a jury instruction,'" which she argues must be done in a "neutral or balanced" manner without "'singl[ing] out the defendant as not to be believed.'" She relies on *State v. Land*, 14 Kan. App. 2d 515, 794 P.2d 668 (1990). There, the Court of Appeals held it was error for the trial court to give an accomplice testimony instruction, like the one given in Liles' case, when the defendant was the only crime participant testifying. See 14 Kan. App. 2d at 519 ("The instruction in this case referred to accomplice testimony. But, Land was testifying both as an accomplice and as a defendant."). That is not what happened in Liles' case.

*Land* is distinguishable mainly because Liles does not challenge an instruction from the court. And even if the prosecutor's argument were construed as saying the instruction legally applied to Liles, *Land* remains distinguishable because Mays and Folsom also testified. In other words, if the instruction applied to Liles, it applied equally to Mays and Folsom, so it was neutral and did not "single out the defendant as not to be believed." 14 Kan. App. 2d at 518. The prosecutor only asserted Liles' testimony should be considered on equal footing with the testimony from Mays and Folsom. See *Louie v. United States*, 426 F.2d 1398, 1402 (9th Cir. 1970) (noting it was appropriate to instruct a jury that it may consider any interest the defendant has in the case's outcome, including the defendant's "hopes and his fears and what he has to gain or lose as a result of your verdict").

Granted, a prosecutor commits error by misstating the law. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021). But this prosecutor's comment was not error. It did not suggest Liles' testimony was unbelievable just because she was the defendant exercising her right to testify. And after pointing out Liles' interest in the outcome, the prosecutor made an evidence-based argument as to why the jury should credit the testimony from Mays and Folsom over hers.

THE CAUTIONARY INSTRUCTION CLAIM

Liles argues the district court erred by refusing to modify Instruction No. 8 to make explicit reference about witnesses who testify for the State in exchange for benefits. Again, we disagree. This issue is controlled by the court's decision in *State v. Dean*, 310 Kan. 848, 856, 450 P.3d 819 (2019), which Liles fails to demonstrate was wrongly decided.

*Additional facts*

During his direct testimony, Mays acknowledged reaching an agreement with the State and was providing testimony in exchange for consideration in his case. On cross-examination, Mays agreed he faced a lesser sentence for his cooperation. He would plead guilty to reduced charges:  attempted second-degree murder in Fisher's death and aggravated battery of Leavitt.

Folsom testified he did not have a formal agreement with prosecutors but assumed he would not face murder charges. He said he was testifying because it was the right thing to do. On cross-examination, Folsom agreed he was providing testimony in the multiple cases related to the murders and negotiating with the State.

8

At the jury instruction conference, Liles requested the instruction about informant testimony, which would have told the jury to consider with caution the testimony of an informant who in exchange for benefits acted as an aid for the State in obtaining evidence, if the testimony was not supported by other evidence. The State objected, arguing there was no informant who acted on the State's behalf to obtain evidence and noting other evidence supported Mays' and Folsom's testimony. Defense counsel countered by observing they received benefits in exchange for their testimony. The court refused to give the informant instruction.

Defense counsel then asked: "[C]an we add to the testimony, accomplice, [*sic*] that in exchange for his testimony he is getting benefits[?]" The court rejected that too, ruling: "I think that's something you get to argue on the credibility of any witness."

*Standard of review*

When analyzing instruction issues, an appellate court follows a three-step process:

> "'(1) determining whether the appellate court can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, i.e., whether the error can be deemed harmless.'
>
> "Whether a party has preserved a jury instruction issue affects the reversibility inquiry. At the second step, we consider whether the instruction was legally and factually appropriate. Appellate courts use unlimited review to determine whether an instruction was legally appropriate. To be factually appropriate, there must be sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, to support the instruction. [Citations omitted.]" *State v. Levy*, 313 Kan. 232, 241, 485 P.3d 605 (2021).

9

A court considers jury instructions as a whole to determine whether they properly and fairly state the applicable law and whether it is reasonable to conclude they could have misled the jury. *In re Care and Treatment of Quillen*, 312 Kan. 841, 849, 481 P.3d 791 (2021).

*Discussion*

Liles properly preserved this issue for appellate review because she requested the instruction modification during trial. See *State v. Gallegos*, 313 Kan. 262, 267, 485 P.3d 622 (2021) (defendant preserved challenge to omission of instruction on voluntary manslaughter by requesting the instruction at trial). The next inquiry is whether her requested modification was legally and factually appropriate. We previously have addressed this specific issue. See *Dean*, 310 Kan. at 856 ("A district court is not legally required to instruct the jury to view with caution the testimony of a noninformant witness who is, nonetheless, testifying in exchange for benefits from the State."). *Dean*'s holding is equally applicable here.

In *Dean*, the defendant's gang associate testified in hopes of obtaining a reduced sentence in another case. The defendant argued the district court should have given the same instruction Liles requested here—the testimony of one who obtains evidence in exchange for benefits should be considered with caution—but modified for a cooperating witness. *Dean*, 310 Kan. at 855, upheld a long line of cases holding that a cautionary instruction is appropriate only when prisoner-witnesses are acting as agents of the State when they obtain the information about which they later testify. See *State v. Ashley*, 306 Kan. 642, 647-48, 396 P.3d 92 (2017).

The paid informant cautionary instruction "complies with the constitutional prohibition against using the testimony of a witness who acts on behalf of the State in eliciting evidence from the defendant in exchange for receiving benefits from the State." *State v. Saenz*, 271 Kan. 339, 348, 22 P.3d 151 (2001). But the informant instruction only applies when witnesses are acting as agents of the State when they obtain the information about which they testify. *Ashley*, 306 Kan. at 647-48.

Liles appears to concede the district court properly declined to give the informant cautionary instruction, but then argues *Dean* was wrongly decided. She contends that if an instruction is factually appropriate and "fairly and accurately states the applicable law," it simply must be given. In her view, this leaves no room for a distinction between required and permissible instructions. This argument finds some support in *State v. Plummer*, 295 Kan. 156, 162, 283 P.3d 202 (2012), that "[i]f an instruction is legally appropriate and factually supported, a district court errs in refusing to grant a party's request to give the instruction."

But *Plummer* is distinguishable because the instruction at issue was for a lesser included offense of the charged crime. See 295 Kan. at 160. And lesser included offense instructions are required by statute under certain circumstances. See K.S.A. 2020 Supp. 22-3414(3) ("In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . the judge shall instruct the jury as to the crime charged and any such lesser included crime."). So when a district court fails to give an otherwise appropriate lesser included offense instruction, the instructions as a whole necessarily would not accurately state the law because they would not comply with the statutory command. See 295 Kan. at 161-62. There is no statutory directive regarding an informant instruction.

11

Liles' focus on the requested modification in isolation also is inconsistent with both the scope of this court's review and the law surrounding the instruction. A reviewing court considers the instructions as a whole "'to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury.'" *Quillen*, 313 Kan. at 849; see *State v. Todd*, 299 Kan. 263, 271, 323 P.3d 829 (2014). Context matters. For example, this court has said "'a failure to provide the jury with the cautionary accomplice witness instruction . . . is not error when the defendant's guilt is plain *or when the jury is cautioned about the weight to be accorded testimonial evidence in other instructions*.'" (Emphasis added.) *Todd*, 299 Kan. at 271.

Similarly, in *Dean*, this court suggested the jury could not have been misled, even though the instructions given did not include the testifying-for-a-benefit cautionary language. The court reasoned,

> "At trial, [the witness] admitted that he was testifying in hopes of getting a reduced sentence in his federal case; defense counsel cross-examined [the witness] on this point; and defense counsel hammered [the witness'] bias in closing argument. Thus, the jury was well aware of [the witness'] benefit and well-equipped to weigh his credibility without a specific cautionary instruction." *Dean*, 310 Kan. at 856.

Both Mays and Folsom admitted they anticipated reduced charges in exchange for their testimony, and defense counsel addressed that potential bias in closing argument. As in *Dean*, the jury in Liles' case knew about the witness' benefits and was capable of weighing their credibility without a more explicit caution in the instructions addressing that possibility.

We adhere to *Dean* and apply it here. We hold the district court did not err by refusing the requested instruction modification under these facts.

12

NO CUMULATIVE ERROR

Anticipating success on both of the previous claims, Liles raises a cumulative error argument based on their combined adverse impact on her right to a fair trial. But since neither issue has merit, there can be no cumulative error. *State v. Bodine*, 313 Kan. 378, 412, 486 P.3d 551 (2021).

THE SENTENCING AGREEMENT CLAIM

Liles' final claim is that the State breached an unwritten, postconviction agreement to exchange a favorable sentencing recommendation for her testimony in her accomplices' cases. She asks us to vacate her sentences and remand the case "for a resentencing hearing, in front of a different judge, at which the State must make a lesser sentencing recommendation." The State argues Liles failed to raise this issue in the district court; that it is impossible to determine if a breach occurred because there is no record of an agreement; and that the record in any event demonstrates Liles did not fulfill her part of any alleged bargain. We agree with the State that the record is inadequate to permit meaningful appellate review. We also note Liles provides no authority to demonstrate a viable basis for resentencing.

*Additional facts*

At a hearing after Liles' convictions, defense counsel requested sentencing be continued because Liles had agreed to cooperate with the State and testify in two other cases. He asked that sentencing wait until that testimony. The State agreed.

When the sentencing hearing occurred, the State acknowledged Liles had expressed interest in cooperating after her convictions in exchange for some favorable

13

consideration or mitigation of her sentence. The State noted she testified in Lowry's trial but characterized that testimony as self-serving and minimizing, comparing it to how she testified at her own trial. The prosecutor said he talked to jurors after the Lowry trial and they did not believe Liles. The prosecutor speculated Lowry's trial would have had the same outcome without Liles' testimony. And because of that, he said, Liles did not cooperate in a meaningful way, so he asked the court to impose the maximum sentences for her convictions.

Defense counsel responded that it was

"a bit disappointing that the Defendant did cooperate with the State and she testified as to what she testified in the trial, and the State had no inclination she was gonna testify any differently. But be that as it may, she did cooperate, judge, and she testified that [*sic*] she told the State that she would do.

"The—I have no idea what the jurors believed or didn't believe, and I have no reason not to believe what [the Prosecutor] said, but her agreement with the State was to cooperate and testify, and she did, and she was prepared to do that if needed be in Mr. Flowers' case."

Defense counsel requested concurrent sentences for the murders and standard sentences on the remaining crimes. He argued Liles' lifestyle and associations led to the crimes and that Liles was paying for her poor choices. He said there was no plan to the killings, but Liles understood her responsibility for her participation.

Neither the State nor Liles described with any particularity the terms of any agreement between them.

14

*Discussion*

Liles refers us to the standard of review applicable for plea agreement breaches. Under that standard,

> "'[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' If the State fails to fulfill a promise it made in a plea agreement, the defendant is denied due process. This is true even if the record indicates that the district court's sentencing decision was not influenced by the State's actions at sentencing. [Citations omitted.]" *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 (2013) (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 [1971]).

If the State fails to perform its portion of a plea agreement and a defendant timely objects, the "breach will constitute harmless error only if a court can say beyond a reasonable doubt that the State's promise had little, if any, influence on the defendant's decision to enter into the plea agreement." *Urista*, 296 Kan. at 594-95. And when the plea is given in exchange for a favorable sentencing recommendation, the remedy for a breach "is to vacate the sentence and remand for a new sentencing hearing before a different district court judge with directions that the State comply with the provisions of plea agreement at sentencing." 296 Kan. at 595.

But Liles did not enter into a plea agreement. Any understanding with prosecutors occurred after the jury convicted her. And Liles simply asserts—without citation to any authority or elaboration—that "[w]hile this issue is more correctly described as a 'breach of sentencing agreement,' it is legally indistinguishable from a breach of plea agreement for purposes of this Court's review."

15

Several problems present themselves, but the most obvious is the failure to make an adequate record about the terms of this claimed postconviction agreement. See *State v. McCullough*, 293 Kan. 970, 997-98, 270 P.3d 1142 (2012) (holding assertion of error not preserved and record inadequate to address the issue, even if it could be reached). "It is 'the well-established rule that an appellant has the burden to designate a record sufficient to establish the claimed error. Without an adequate record, an appellant's claim of alleged error fails.'" *Vonachen*, 312 Kan. at 460. We further note that,

> "A failure to support an argument with pertinent authority or to show why the argument is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. Therefore, an argument that is not supported with pertinent authority is deemed waived and abandoned." *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013).

See also Kansas Supreme Court Rule 6.02(a)(1)(5) (2021 Kan. S. Ct. R. 36) ("An appellant's brief must contain . . . [t]he arguments and authorities relied on.").

Claims of a plea agreement breach differ significantly from what is alleged here. Liles had already been convicted of the crimes when any agreement was reached. And she had already waived her Fifth Amendment privilege against self-incrimination that could have been bargained away under the agreement when she voluntarily testified in her own defense. See *State v. Belone*, 51 Kan. App. 2d 179, 186, 343 P.3d 128 (2015) (citing *State v. Simmons*, 78 Kan. 852, 853, 98 P. 277 [1908]).

The requirement for prosecutors to follow through on their plea agreement commitments arises from the desirability of resolving cases by plea bargain and the attendant requirement for "fairness in securing [such] agreement." *Santobello*, 404 U.S. at 261. We are aware of no appellate case addressing a claim that the State violated a sentencing recommendation agreement reached postconviction in exchange for the

16

defendant's testimony, and Liles cites none. Worse yet, the terms of any such alleged agreement do not appear in the record. Even in her appellate brief, she only vaguely claims the State agreed to "make some sort of beneficial sentencing recommendation in exchange for that testimony."

We hold the failure to develop the record makes this question inappropriate for appellate review.

Affirmed.