MODIFIED OPINION[1]

NOT DESIGNATED FOR PUBLICATION

No. 126,968

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JACK REX MILDFELT JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE YOUNG, judge. Submitted without oral argument. Opinion filed September 19, 2025. Modified opinion filed October 3, 2025. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM: Jack Rex Mildfelt Jr. initially appealed his convictions for child sex offenses in Saline County District Court. He challenged his convictions on three bases, including the district court's admission of K.S.A. 60-455 evidence and two challenges to the sufficiency of the evidence to support his convictions. However, during the pendency of his appeal, he withdrew those three arguments and no longer contests his convictions.

---

[1] **REPORTER'S NOTE:** Opinion No. 126,968 was modified by the Court of Appeals on October 3, 2025, in response to the Appellant's Motion for Rehearing or Modification filed September 26, 2025. Modified language is at slip op. at 6-7.

But he contends the district court erred by imposing six advocacy center fees at sentencing under K.S.A. 20-370. After our review of the record and precedent, we affirm Mildfelt's sentence.

FACTUAL AND PROCEDURAL BACKGROUND

Given Mildfelt's withdrawal of his challenges to his conviction, the most sensitive details leading to his conviction are not completely pertinent to our review. A summary of the events follows.

*Amber and Bailey's allegations lead to investigation*

Generally, Amber (referenced here by pseudonym, as all victims will be throughout this opinion) was a friend of Mildfelt's daughter when Amber was in the third grade in 2017. She often visited Mildfelt's home, including overnight visits. Amber's mother was uncomfortable with Mildfelt for various reasons and became acquainted with Mildfelt's ex-wife as a preferable environment for Amber to have sleepovers with her friend. In August 2020, Mildfelt's ex-wife disclosed to Amber's mother that she was engaged in a custody battle with Mildfelt, who had primary custody of their daughter. Mildfelt's ex-wife also reported that other people had alleged inappropriate behavior by Mildfelt in the past.

On August 14, 2020, when Amber was 12 years old, Amber's mother confronted her about possible sexual abuse, and Amber reported to her various allegations of abuse that led her mother to contact the police. After the police interviewed Amber, she underwent a forensic interview with a detective on August 26, 2020. Amber's interview testimony was consistent with her trial testimony.

2

In the meantime, Amber's mother reported that she suspected Mildfelt was also abusing another young girl, Bailey, who often played with Mildfelt's daughter and Amber, but the mother did not know the girl's last name. After learning the girl's last name from Mildfelt's ex-wife, Amber's mother contacted Bailey's guardian, an aunt, on September 14, 2020, to express her concerns. The aunt initially questioned Bailey, who reported that nothing had happened. After Bailey's aunt shared a story of her own experience with sexual abuse, Bailey eventually made allegations of sexual abuse against Mildfelt. After Bailey disclosed these allegations of abuse, her grandfather contacted the police. Her aunt took Bailey for a forensic interview on September 29, 2020. Bailey's interview testimony was essentially consistent with her trial testimony.

*Allegations from other alleged victims: "Cathy," "Donna," and "Ella"*

During this time frame, conversations about the sexual abuse allegations circulated on Facebook. Another young woman, Cathy, who saw some of these posts, reported to the police abuse by Mildfelt that occurred at his house in 2001 when she was 11 or 12 years old, visiting his house with his niece. A few days after the abuse occurred, Cathy reported the incident to Mildfelt's niece along with another friend, Faye, who reported something similar had happened to her. At the time, Cathy did not feel safe reporting her incident to an adult since the adults did nothing in Faye's case.

Based on Cathy's allegations, the police investigated past police reports and discovered two other alleged victims of Mildfelt's sexual abuse: Donna and Ella.

Donna reported that she had been sexually assaulted by Mildfelt in 2000, when she was 12 years old. Ella disclosed to a friend in 2009 that her mother's boyfriend, Mildfelt, was sexually abusing her. Ella reported that she had told her mother, but her mother did nothing about it. But Ella's friend told his mother what Ella reported to him, and his mother reported the incident to the police.

3

Ella was forensically interviewed on August 29, 2009. Her interview testimony was consistent with her trial testimony.

*Investigation and criminal proceedings*

Following the investigation by police, the State charged Mildfelt with various sex crimes. The charges against Mildfelt transformed over the course of the case as a result of amendments permitted by the district court. The final charges against Mildfelt, contained in the second amended complaint and submitted to the jury, involved rape, aggravated criminal sodomy, two counts of aggravated indecent solicitation of a child, and two counts of aggravated indecent liberties with a child.

Before trial, the State sought to admit K.S.A. 60-455 evidence of the additional and uncharged allegations of sexual misconduct by Cathy, Donna, and Ella in 2000, 2001, and 2009. Some of the allegations had been investigated but none of them had been prosecuted. After conducting two hearings on the matter, the district court permitted the State to introduce these unrelated allegations of sexual abuse to demonstrate intent and propensity.

The case was presented to a jury over eight days in March 2023. Mildfelt elected not to testify. The jury returned guilty verdicts on each of the six counts of the complaint.

At Mildfelt's sentencing, the court imposed four consecutive terms of life imprisonment without the possibility of parole for 25 years (hard 25), and a concurrent 32-month sentence. In imposing costs, the district court ordered Mildfelt to pay $2,400 in Children's Advocacy Center assessment fees.

Mildfelt timely appealed.

## THE DISTRICT COURT DID NOT ERR BY ASSESSING SIX CHILDREN'S ADVOCACY CENTER FEES AT SENTENCING

In Mildfelt's appeal, he challenged his convictions on three bases, including the district court's admission of K.S.A. 60-455 evidence and two separate arguments regarding the sufficiency of the evidence to support his convictions. However, after our court heard his case, he withdrew those three arguments and no longer challenges his conviction. But Mildfelt maintains his final claim on appeal concerning the imposition of costs at sentencing. He contends that the district court imposed costs for six Children's Advocacy Center (CAC) fees in violation of the authority provided by statute. This issue requires us to construe K.S.A. 20-370, a question of law subject to plenary review. *State v. Milo*, 315 Kan. 434, 440, 510 P.3d 1 (2022).

This statute reads in pertinent part:  "On and after July 1, 2013, any defendant convicted of a crime under chapter 21 of the Kansas Statutes Annotated, and amendments thereto, in which a minor is a victim, shall pay an assessment fee in the amount of $400 to the clerk of the district court." K.S.A. 20-370(a). The funds paid in because of this statute are utilized for the operating expenditures of children's advocacy centers in Kansas. K.S.A. 20-370(b).

This court has twice considered the argument Mildfelt advances, and both times has rejected the argument. See *State v. Sanders*, 65 Kan. App. 2d 236, 261-64, 563 P.3d 234 (2025), *rev. denied* 320 Kan. 867 (2025); *State v. McDuffie*, No. 113,987, 2017 WL 2617648, at *19, 21 (Kan. App. 2017) (unpublished opinion). Though the panels relied on slightly different reasoning, they each concluded that the legislative intent of K.S.A. 20-370(a) was to assign one assessment fee to each crime of conviction involving a child victim.

*McDuffie* found an ambiguity in the statutory language and resolved that ambiguity by referring to legislative history. 2017 WL 2617648, at *19 (concluding that the Legislature "intended to create a one-to-one crime-to-fee ratio requiring defendants to pay a [CAC] assessment fee for each crime they are convicted of committing against a minor"). *Sanders* analyzed the language of the statute and compared that language to similar language in other statutes to conclude that K.S.A. 20-370(a) was not ambiguous and "require[d] a defendant convicted of a crime against a minor victim to pay an assessment fee for each crime committed against a minor." 65 Kan. App. 2d at 264.

Although other sentencing statute(s) impose fees on a criminal defendant for services rendered by government agencies, the language of those statutes are clearer than K.S.A. 20-370(a). For instance, K.S.A. 28-176(a) requires a defendant to pay a laboratory analysis fee to the Kansas Bureau of Investigation (KBI) or other laboratory providing services "for *every individual offense*." (Emphasis added.) Ostensibly, this is to cover the costs of the "laboratory services, forensic computer examination services or forensic audio and video examination services" provided by the requisite agency, given that the statute outlines that this cost is "directly related to the cost of" the services. K.S.A. 28-176(a). Similarly, K.S.A. 32-1049a(d) requires a "reinstatement fee of $50 *for each charge or sentence*" on which a person fails to comply with a wildlife and parks citation. (Emphasis added.) See *Sanders*, 65 Kan. App. 2d at 262-64 (discussing other statutes in which various terms are used as applied to the assessment of fees).

It is conceivable that when K.S.A. 20-370(a) was drafted it was intended that any CAC fee imposed would correlate with the assessment(s) conducted by a CAC in a one-to-one fashion as Mildfelt suggests, and as K.S.A. 28-176(a) outlines for the KBI laboratory fees. This interpretation would arguably offset claims that the fee is better characterized as a penalty and is reasonable given that child sexual assault cases frequently involve multiple charges. Even so, we find this argument unpersuasive on two accounts.

First, in this case, we have no information which apprises us of the work of the center, such as how many assessments or interviews may have been performed related to the criminal charges in this case. Although Mildfelt's argument is reasonable as discussed above, the record does not support this theory. *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021) (The party alleging an error occurred has the burden of designating a record that establishes the claimed error.); see Supreme Court Rule 6.02(a)(4), (a)(5) (2025 Kan. S. Ct. R. at 36). Without such a record, an appellate court presumes the district court's action was proper. *State v. Valladarez*, 288 Kan. 671, 686, 206 P.3d 879 (2009).

Second, the Legislature knows how to use specific language to require imposing fees per charge, crime, or case depending on the goal of the statute, as the Legislature precisely did in the KBI laboratory fee statute, K.S.A. 28-176(a). See *Sanders*, 65 Kan. App. 2d at 262-64 (reviewing other fee assessment statutes). But unlike the language found in the KBI laboratory fee statute, in K.S.A. 20-370(a) the Legislature did not link the CAC fees to any precise work performed by the CAC.

Being unable to locate any alternative logic for the application of K.S.A. 20-370(a), we find the plain language discussion in *Sanders* compelling. Therefore, under this approach to statutory construction, Mildfelt's argument that K.S.A. 20-370(a) authorizes only one assessment fee fails. The district court properly assessed $2,400 in CAC fees against Mildfelt because each of his six convictions involved child victims.

Affirmed.