NOT DESIGNATED FOR PUBLICATION

No. 127,235

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DURRELL SCOT THOMAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Oral argument held September 16, 2025. Opinion filed March 6, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PICKERING, J.:  Durrell Scot Thomas appeals his convictions for felony possession of marijuana, battery, interference with law enforcement, possession of drug paraphernalia, driving while suspended, and speeding. On appeal, he claims sufficiency of the evidence issues affecting venue and interference with law enforcement, in addition to prosecutorial error and an illegal sentence. Finding no error, we affirm.

1

Following a traffic stop on March 31, 2022, the State charged Thomas, the vehicle's driver, with one count of aggravated battery against a law enforcement officer, a severity level 3 person felony; misdemeanor interference with law enforcement; misdemeanor possession of marijuana; possession of drug paraphernalia; driving while suspended; and speeding. Before the preliminary hearing, the State amended its complaint to allege felony possession of marijuana based on convictions for possession of marijuana in two Topeka Municipal Court cases: CR-2008-0012086-MS and CR-2008-0015321-MS.

At the preliminary hearing, the State proffered two certified convictions, and Thomas did not object to the proffer. The district court found probable cause existed to support the felony aggravated battery against a law enforcement officer and felony possession of marijuana and bound Thomas over for arraignment.

The State subsequently amended the complaint to include a count of possession of cocaine, a drug severity level 5 felony. In October 2023, shortly before trial, the State amended the complaint for the fourth time. At the time of trial, Thomas was charged with:

- Aggravated battery, a severity level 5 person felony;
- Possession of cocaine, a drug severity level 5 felony;
- Possession of marijuana, 3rd or subsequent offense, a drug severity level 5 felony;
- Possession of drug paraphernalia, a class B nonperson misdemeanor;
- Interference with law enforcement, a class A nonperson misdemeanor;
- Driving while suspended, 3rd or subsequent offense, a class A misdemeanor; and,
- Speeding, a traffic infraction.

At trial, the State presented the two law enforcement officers who were involved with the March 2022 traffic stop and arrest of Thomas. The first witness, Jesse Cannon, testified that he was employed by the Prairie Band Tribal Police Department at the time of the stop. Cannon recalled how he initially assisted Tribal Officer Alexander Batstone with the traffic stop. As a law enforcement officer, Cannon recorded the traffic stop via his body camera. At trial, the State admitted the body camera footage into evidence but did not publish (which means to display) to the jury until the State's direct examination of its second witness and final witness, Batstone.

Batstone testified that he worked for the Prairie Band Tribal Police from February 2019 until November 2023. He served as an "advance drug detection officer" specializing in "DUI intervention of a drug or narcotics." Similar to Cannon, Batstone testified that he was working in his capacity as a law enforcement officer at the time of the traffic stop. Batstone explained how he had been conducting "routine traffic control on US-75 Highway" when he noticed a vehicle traveling at a high speed and initiated a traffic stop.

After stopping Thomas, Batstone noticed that Thomas had constricted pupils, was sweating "profusely," and there was "a strong odor of marijuana being emitted from the vehicle." Dispatch notified Batstone that Thomas' license was suspended, and Batstone asked him to step out of the vehicle. Thomas complied but repeatedly explained that his license was not suspended.

Batstone informed Thomas that he was under arrest for driving while suspended and "attempted to begin placing hand restraints on him, or handcuffs." Thomas then began "actively resisting, began tensing his muscles, trying to pull away." At one point while being moved into the back of a police vehicle, Thomas "bucked back hard enough" to dislocate Batstone's left shoulder. Thomas continued to resist until he was tased.

3

Batstone testified he was wearing his body camera and it recorded the entire encounter. The body camera footage was admitted into evidence and played for the jury. During the body camera footage's publication, the State frequently stopped the video to ask Batstone clarifying questions. As part of his testimony, Batstone confirmed that, even if Thomas' license had been valid, he still would have arrested Thomas based on the odor of marijuana. He explained that Thomas was "straight-legging," which was "essentially locking your legs out against two points of the vehicle." Batstone also testified that he found marijuana in a plastic sack in the driver's side door, two straws that he thought contained methamphetamine (later determined to contain cocaine residue), "multiple recently smoked marijuana cigarettes in the ashtray," another bag containing marijuana in a bookbag in the back seat, and "a few other small items of drug paraphernalia."

The State questioned why Batstone continued to use his shoulder after it was dislocated. Batstone explained that his shoulder had popped back into its socket, but, though he could "tell it wasn't right," he also had an "adrenaline high" and "wasn't really feeling much pain there at all." He testified that he was taken to Holton Community Hospital. The body camera footage showed Batstone spoke with a lieutenant about going to the hospital for an evaluation on Batstone's shoulder. Batstone explained to the jury that "[a]ny time in the [I]ndian reservation if you got injured on the job, you . . . at the very least need to go by ambulance or a supervisor is taking you to the hospital."

Batstone testified his shoulder was incredibly sore and, even after three to four months of physical therapy, it still had not completely healed. Batstone told the jury that he has limited range of motion and trouble straightening his arm. His shoulder "pops and grinds" when he moves it.

On cross-examination, Batstone testified that there was so little residue located on the straw that he declined to field test it, and the straw was sent for testing by the KBI. He acknowledged he did not find "any other items or baggies" that he believed were related to

the cocaine. Batstone agreed that Thomas initially provided "passive resistance" to handcuffs and agreed Thomas was not trying to headbutt him or kick him.

On redirect examination, Batstone confirmed the KBI report indicated the presence of cocaine and the presence of marijuana. The State then admitted Thomas' certified driving record into evidence without objection and rested. Thomas testified on his own behalf in a narrative format.

During closing arguments, the State argued Batstone provided testimony that Thomas' car reeked of marijuana and marijuana was found in his vehicle. In addition, the State argued that "[c]ocaine residue is cocaine." The prosecutor suggested the jury look at Thomas' driving record, which showed the suspension of his license. The State contended that Thomas did not intend to hurt Batstone but did so recklessly. The prosecutor told the jury, "The way you fight police officers when you don't agree with the charge is to come to court."

For his closing arguments, Thomas argued that Batstone testified there was not enough substance on the straw to field test. He told the jury that "whether or not the possession of drugs exists, that's a fact question for the jury." He suggested that the possession of cocaine should be a possession of drug paraphernalia charge because "[t]here wasn't any cocaine. There was cocaine residue. Maybe that's the same thing. I would argue that it's not." Similarly, Thomas stated he should not be convicted of "obstruction" because he was trying to provide Batstone with "additional information." And Thomas contended he caused bodily harm, not great bodily harm. Although he acknowledged it was inappropriate, Thomas also asserted that "passive resistance" does not rise to aggravated battery.

During rebuttal, the prosecutor suggested, "Now, if I walked by and popped your shoulder out of your socket, I think you would be hard pressed to tell me that I didn't do great bodily harm." The State continued:

5

"I've got to implore you, ladies and gentlemen, do not send a message. Do not acquit him and send a message to everybody in this county and everybody down in Topeka that you can come up here, and you . . . can resist arrest; you can fight cops, and you just get away with it."

After approximately 45 minutes of deliberation, the jury returned a verdict. It found Thomas not guilty of possession of cocaine, but found Thomas guilty of possession of marijuana, possession of drug paraphernalia, obstruction of a law enforcement officer, speeding, and driving while suspended. Rather than finding Thomas guilty of reckless aggravated battery, the jury found Thomas guilty of battery.

At sentencing, the district court noted that the primary offense was possession of marijuana as a third or subsequent offense, a severity level 5 drug felony, and Thomas had a criminal history score of F. Thomas responded, "Your honor, we have no objection to criminal history score. We have no requests for additions or corrections to the Presentence Investigation Report."

For possession of marijuana, the district court sentenced Thomas to 17 months' incarceration and suspended the sentence to 12 months of probation. It also ran all of Thomas's misdemeanor sentences, totaling 36 months in jail, concurrent with the possession of marijuana sentence.

Thomas timely appealed.

ANALYSIS

I.      *There Was Sufficient Evidence Supporting Thomas' Convictions*

Thomas makes two sufficiency of the evidence arguments. First, he contends his convictions must be vacated because there was no evidence that Thomas' crimes occurred within Jackson County, Kansas.  Later, Thomas asserts that his conviction for interference with law enforcement must be reversed because the State failed to show that Batsone was "'authorized by law to serve process.'"

*Standard of Review*

"When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). To the extent that resolution of these issues requires statutory interpretation, we have unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). Further, "[w]e do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *Mendez*, 319 Kan. at 723.

*Discussion*

A.      *There was sufficient evidence from which a reasonable juror could infer that the crimes occurred within Jackson County, Kansas.*

On appeal, Thomas challenges the sufficiency of the evidence relating to venue. He contends that there was no evidence the traffic stop occurred on the Prairie Band Potawatomi Nation reservation; and, even if the stop occurred on the reservation, there was no evidence the reservation is wholly within Jackson County, Kansas. Thomas asserts that

7

"although Kansas law allows courts to take judicial notice that an incorporated city is within the boundaries of a county, no such inference is proper for a tribal reservation."

In response, the State asserts there was sufficient evidence from which the jury could infer that the traffic stop occurred within Jackson County, Kansas. The State contends it is an "undeniable fact" that the Prairie Band Potawatomi Nation reservation is located wholly within Jackson County and that this fact is subject to judicial notice.

Under K.S.A. 22-2602, a criminal prosecution must typically occur in the county where the crime was committed. Whether venue is proper is a question of fact for the jury. *State v. Calderon-Aparicio*, 44 Kan. App. 2d 830, 837, 242 P.3d 1197 (2010). "'Venue may be established by proof of facts and circumstances introduced in evidence from which the place or places of commission of the crime or crimes may be fairly and reasonably inferred.'" 44 Kan. App. 2d at 837. "'If an inference is a reasonable one, the jury has the right to make the inference.'" *State v. Frantz*, 316 Kan. 708, 736, 521 P.3d 1113 (2022).

In *Calderon-Aparicio*, the defendant argued there was insufficient evidence to prove his crimes occurred in Johnson County, Kansas. The panel noted, however, that a reasonable factfinder could have inferred the crimes occurred in Johnson County because: (1) a City of Shawnee police officer responded to the scene of the incident; (2) "the incident occurred at the intersection of Interstate 435 and Midland Drive"; and (3) the evidence was taken to, and inspected at, the Shawnee Police Department. 44 Kan. App. 2d at 840. As a result, the panel was "convinced that a rational factfinder could have found that Calderon-Aparicio committed the crimes . . . in Johnson County beyond a reasonable doubt." 44 Kan. App. at 840-41.

Here, there was sufficient evidence from which a juror from Jackson County could reasonably infer the crimes were committed in Jackson County. As the State points out, the jury heard testimonial evidence that the traffic stop occurred in Jackson County, Kansas. In

the first few seconds of Batstone's body camera footage, he states: "75 North, 198th." From the context—Batstone is initiating a traffic stop—it is clear Batstone is referring to his current location. Also, both Cannon and Batstone testified that they were employed by the Prairie Band Tribal Police at the time of the traffic stop, and there was no evidence Batstone was conducting traffic enforcement outside of his jurisdiction. Additionally, Batstone testified that Thomas was transported to the Jackson County Jail. Last, the jury heard Batstone's testimony that, because he was injured on the job and tribal standard procedure required he be taken to the hospital, he went to Holton Community Hospital.

In the light most favorable to the State, we are convinced that a rational factfinder could have found beyond a reasonable doubt that the crimes alleged occurred within Jackson County, Kansas.

B. *Similarly, there was sufficient evidence supporting the conviction for interference with a law enforcement officer.*

In its fourth amended complaint, the State charged Thomas with interference with law enforcement in violation of K.S.A. 2021 Supp. 21-5904(a)(3). Interference with law enforcement is defined as: "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." K.S.A. 2021 Supp. 21-5904(a)(3). The Kansas Supreme Court has held that the elements of interference with law enforcement are: "(1) an identified law enforcement officer carrying out some official duty; (2) 'defendant knowingly and willfully obstructed or opposed [the] officer'; and (3) 'defendant knew or should have known the person he opposed was a law enforcement officer.'" *State v. Brown*, 305 Kan. 674, 690, 387 P.3d 835 (2017).

Thomas asserts that there was insufficient evidence to convict him of interference with law enforcement because there was no evidence Batstone was authorized to serve

9

process of law. He contends "some cases have equated 'law enforcement officer' with 'person authorized by law to serve process' without any particular analysis." Thomas argues that the State could not have proved Batstone was authorized to serve process of law because "[m]unicipal or tribal officers are not included on [the list of process servers in K.S.A. 60-303] and therefore are not authorized to serve process, unless evidence shows that they are specifically appointed as a process server by a judge."

Thomas contends that in *State v. Murrin*, 309 Kan. 385, 435 P.3d 1126 (2019), the Kansas Supreme Court called into question *Brown*'s third element of interference with a law enforcement officer. In *Murrin*, the court noted that the "knowledge requirement appears to have been grafted on to the statutory crime by our court prior to the recodification of the criminal code and has continued to be articulated as part of the recodified crime despite the absence of statutory language to support it." 309 Kan. at 399.

But Thomas' argument is misplaced. First, the *Murrin* court grappled with whether a voluntary intoxication instruction was appropriate as a defense to an interference with law enforcement charge. After concluding that voluntary intoxication was not legally appropriate, our Supreme Court noted there was a "complication" in the case: The jury was instructed it had "to find that Murrin 'knew or should have known that Officer Galindo was a law enforcement officer.'" 309 Kan. at 399. As a result, the *Murrin* court concluded: "*Even if we would question the propriety of the judicial enhancement today*, as this case was instructed on the interference charge, it was error for the judge not to instruct on voluntary intoxication as a potential defense." (Emphasis added.) 309 Kan. at 399. The *Murrin* court focused on whether the third element of interference with law enforcement created a specific intent crime, not whether the officer must be authorized to serve process of law.

We are duty-bound to follow Supreme Court precedent unless there is some indication the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). As stated, our Supreme Court found the first element of

interference with law enforcement under K.S.A. 21-5904(a)(3) was: "(1) an identified law enforcement officer carrying out some official duty." *Brown*, 305 Kan. at 690. This element of interference with law enforcement has been the law in Kansas for more than 40 years. See *State v. Parker*, 236 Kan. 353, 364-65, 690 P.2d 1353 (1984). There has been no indication the Kansas Supreme Court is departing from *Brown* and *Parker*.

Another panel of this court addressed a similar argument in *State v. McCormick*, No. 86,774, 2002 WL 35657510 (Kan. App. 2002) (unpublished opinion). There, McCormick was convicted of possession of marijuana and obstruction of an official duty after a Lawrence police officer stopped him for speeding. McCormick refused to exit his vehicle and was removed by force. The officer discovered marijuana on McCormick during the pat-down.

On appeal, McCormick argued the jury instruction for obstructing an official duty was "fatally flawed" because it did not allege the police officer was authorized by law to serve process. 2002 WL 35657510, at *5. The panel concluded McCormick's claim was "simply absurd" and "totally without merit." 2002 WL 35657510, at *5. Similarly, as part of his sufficiency of the evidence arguments, McCormick made the same argument he made regarding the jury instructions. The panel found McCormick's argument "without merit" and held there was sufficient evidence to find McCormick guilty of obstructing an official duty beyond a reasonable doubt. 2002 WL 35657510, at *6.

We do not believe *Murrin* calls into question the first element of interference with a law enforcement officer as identified in *Brown* and *Parker*. There was sufficient evidence to support the jury's verdict for interference with a law enforcement officer beyond a reasonable doubt.

II.     *The Prosecutor's Closing Argument Was Error but the Error Was Harmless*

*Standard of Review*

"'To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict."'" *Mendez*, 319 Kan. at 737.

We will review a claim of prosecutorial error made during closing argument even without a timely objection. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021).

*Discussion*

Citing *State v. Ruff*, 252 Kan. 625, 636, 847 P.2d 1258 (1993), Thomas argues the prosecutor erred when he told the jury not to "'send a message' that you can 'just get away with' crimes." He asserts the prosecutor's statements could only inflame the passion of the jury against Thomas. The State concedes the prosecutor's statement was error. Thus, the only question is whether the error was constitutionally harmless under *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *Mendez*, 319 Kan. at 737. To determine whether prosecutorial error is harmless, "[w]e may consider the district court's jury instructions and the strength of the evidence against the defendant . . . ." *State v. Barnes*, 320 Kan. 147, 163, 563 P.3d 1255 (2025).

In *State v. Jackson*, 61 Kan. App. 2d 184, 500 P.3d 1188 (2021), Jackson was charged with aggravated indecent liberties with a child, two counts of commercial sexual exploitation of a child, and indecent liberties with a child. During closing argument, the State asked the jury "'to keep in mind the story of woe is not a defense.'" 61 Kan. App. 2d at 186. On appeal, the panel held the prosecutor's statement was not erroneous but, even still, assessed whether Jackson had been prejudiced from this statement. It concluded Jackson was not prejudiced because his testimony "independently supplied the evidence needed to sustain his conviction for aggravated indecent liberties with a child" and the jury acquitted him of commercial sexual exploitation of a child. 61 Kan. App. 2d at 199.

Similarly, in *State v. Blevins*, 313 Kan. 413, 485 P.3d 1175 (2021), the defendant challenged various misstatements of fact and law, the prosecutor sharing his opinion, and bolstering witness credibility as prosecutorial error. While our Supreme Court found the prosecutor's errors were harmless individually, it also considered their cumulative impact. It noted the district court instructed the jury that "'[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded.'" 313 Kan. at 436-37. Based on the overwhelming evidence against Blevins and the district court's instruction, the court found the prosecutor's errors were harmless. 313 Kan. at 437.

As in *Jackson* and *Blevins*, the State here presented overwhelming evidence supporting Thomas' convictions. Batstone's left shoulder was dislocated by Thomas during their struggle, and Batstone's and Cannon's body camera footage supports both Thomas' conviction for battery and his conviction for interference with law enforcement. Batstone testified he discovered marijuana and drug paraphernalia in Thomas' car, and the body camera footage showed Batstone's discovery of marijuana.

13

The district court properly instructed the jury that "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements that were made that are not supported by evidence, they should be disregarded." The jury deliberated for nearly an hour and acquitted Thomas of possession of cocaine and convicted him of a lesser included offense of aggravated battery. Overwhelming evidence supported Thomas' remaining convictions for battery, interference with law enforcement, possession of marijuana, and possession of paraphernalia. As a result, the prosecutor's erroneous statements during closing argument were harmless.

III.     *Thomas Does Not Meet His Burden to Show His Felony Marijuana Possession Charge Was Erroneous*

*Standard of Review*

"[A] challenge to the classification of a prior conviction and the resulting criminal-history score . . . present[s] an illegal-sentence claim" which may be raised "'at any time.'" *State v. Steinert*, 317 Kan. 342, 349, 529 P.3d 778 (2023). Whether a sentence is illegal is a question of law subject to unlimited review. *Daniels*, 319 Kan. at 342. Issues of statutory interpretation are also subject to unlimited review. If statutory language is plain and unambiguous, we apply the language as written. *State v. Kerrigan*, 317 Kan. 683, 686, 538 P.3d 852 (2023).

*Discussion*

Thomas argues that a prior conviction for possession of marijuana is necessary to enhance possession of marijuana to a felony. He asserts he was charged in Topeka Municipal Court with possession of a controlled substance and that there are "many other substances" in addition to marijuana that can result in a misdemeanor charge of possession

14

of a controlled substance. As a result, Thomas contends that "a Topeka municipal conviction for possession of a controlled substance is not identical to or narrower than a state conviction for possession of marijuana."

Under K.S.A. 21-5706(c)(3)(C), possession of marijuana is a "drug severity level 5 felony if that person has two or more prior convictions under such subsection, under K.S.A. 65-4162, prior to its repeal, under a substantially similar offense from another jurisdiction, or under any city ordinance or county resolution for a substantially similar offense."

Thomas's argument is unpersuasive for three reasons. First, the Kansas Supreme Court recently addressed a similar argument in *Daniels*. There, Daniels pled guilty to three charges. His presentence investigation (PSI) report included a person felony—a 2003 conviction for burglary in Georgia under Ga. Code Ann. § 16-7-1. Daniels did not complain of any errors in his PSI and, at sentencing, admitted his criminal history was correct. On appeal, Daniels argued his sentence was illegal because his 2003 burglary conviction should not have been scored as a person felony.

Our Supreme Court noted that "an admission to criminal history includes both an admission to a conviction's existence *and* its classification for sentencing purposes." 319 Kan. at 346. Since Daniels did not challenge his criminal history score, the *Daniels* court held that, under K.S.A. 21-6814(c), Daniels bore "the burden of proving [his] criminal history by a preponderance of the evidence when [his] criminal history has previously been established at a sentencing hearing." 319 Kan. at 348.

In finding substantial competent evidence supported the sentencing court's finding that Daniels' burglary conviction was a person crime, the Supreme Court explained:

> "Daniels correctly points out that the State did not specifically designate the version of the crime for which he was convicted under the Georgia statute. But, at this

15

postsentencing point in Daniels' case, the burden has shifted, and Daniels fails to meet it because he did not provide the district court, the Court of Appeals panel, or this court with any evidence, such as his Georgia journal entry, outlining the elements of his Georgia burglary conviction to prove his previously established criminal history was incorrect. As in [*State v.*] *Corby*, [314 Kan. 794, 502 P.3d 111 (2022)], the district court's classification for the pertinent conviction may have been wrong. But we also know it may have been right. Daniels fails to meet the burden outlined in K.S.A. 21-6814(c)." *Daniels*, 319 Kan. at 349.

Here, at sentencing, Thomas did not challenge the two Topeka Municipal Court cases that enhanced his possession of marijuana to felony possession of marijuana under K.S.A. 21-5706(c)(3)(C). And on appeal, Thomas provides no evidence to suggest that the two Topeka Municipal Court convictions were for anything other than possession of marijuana.

Second, Thomas has the burden of providing a record sufficient for review of his claimed error. See *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021). At the preliminary hearing, the State proffered two certified convictions from Topeka Municipal Court to show the current charge was Thomas's third or subsequent marijuana possession charge. Those certified convictions—which were necessary to bind Thomas over on felony possession of marijuana—were admitted without objection. The exhibits were not included in the record on appeal. The certified convictions would show whether Thomas' Topeka Municipal Court convictions were for possession of marijuana or for some other offense. Because the certified convictions were not included in the record on appeal, Thomas has not designated a record showing error. Absent such a record, an appellate court presumes the district court's action was proper. *State v. Valladarez*, 288 Kan. 671, 686, 206 P.3d 879 (2009).

Finally, the State aptly notes that Thomas' PSI report included a 2013 conviction for possession of marijuana, second offense, in Shawnee County District Court. Citing K.S.A. 21-6814(d), the State argues we can take judicial notice of the journal entry related to this

2013 conviction which "definitively establishes" that Thomas had two prior possession of marijuana convictions.

In his reply brief, Thomas asserts that, under *State v. Roat*, 311 Kan. 581, 600, 466 P.3d 439 (2020), his prior criminal history is not binding and may be challenged in a later case. But *Roat* held that:

> "A court can therefore accept the criminal history worksheet in the PSI as evidence of the defendant's criminal history. And, it can take judicial notice of that worksheet even if the person who prepared it is unavailable as a witness. But the defendant is entitled to challenge that criminal history worksheet, and the State is then required to prove the accuracy of the history by a preponderance of the evidence. This prevents a district court from relying solely on previous criminal history scores to calculate a sentence over a defendant's objection." 311 Kan. at 600.

Thomas did not object to the inclusion of his conviction for possession of marijuana, second offense, in his criminal history worksheet. As a result, the sentencing court could have relied on it to conclude Thomas had at least two prior convictions for possession of marijuana. He is not entitled to relief.

Because he did not challenge his criminal history score at sentencing, on appeal Thomas has the burden to prove his criminal history score by a preponderance of the evidence. See K.S.A. 21-6814(c). Thomas has not provided a record showing error. Thus, we cannot say the district court erred.

Affirmed.